S. S. ALSOP, Adm'r of JAMES MOSELEY, v. W. F. MOSELEY et al.

*Judgment Lien—Federal and State Practice.*

1. The simple rendition of a judgment in the Supreme Court will not constitute a lien upon the judgment debtor's land. To create such lien, it is essential that the judgment shall be "docketed" in the county in which the land is situate, as directed by the statute.

2. Prior to the enactment by Congress of the Act of August 1, 1888, to regulate the liens of judgments of the Courts of the United States, and of the concurring Act of the General Assembly of North Carolina (Ch. 439, Laws 1889), the only way by which a judgment rendered in the Federal Courts could acquire a lien on the debtor's real property, was by suing out a final process and enforcing it in accordance with the practice which prevailed in this State anterior to the passage of the law which provides for the acquisition of a lien by docketing the judgment.

3. Nor did the Act of Congress of June, 1872, entitled "An act to further the administration of justice," in the absence of the adoption of any of the rules there authorized, by the Federal Courts in North Carolina, create any lien in favor of judgments rendered in those Courts.

This is a SPECIAL PROCEEDING, instituted before the Clerk of the Superior Court of HALIFAX County, for license to sell real estate to raise assets with which to pay the debts of the intestate James Moseley.   Issues of law and fact having been raised by the pleadings, the cause was transferred to the CIVIL ISSUE docket, and tried before *MacRae, J.*, at March Term, 1889.

The question was:   Whether certain judgments, recorded against the intestate in the Circuit Court of the United States for the Eastern District of North Carolina, and which had been assigned to the defendant Mary P. Alsop, were liens upon the land which were and ought to be subjected to sale, and the material facts pertinent thereto were agreed to be as follows:

1. James Moseley died intestate, domiciled in Edgecombe County, March 4th, 1885, and shortly thereafter administration was duly granted upon his estate.

2. That the personal property of the intestate was about $487, which has been applied to the payment of other debts of the intestate and charges of administration.

3. At November Term, 1877, of the Circuit Court of the Eastern District of North Carolina, two judgments were rendered and docketed against John T. Alsop (who was the principal debtor), and said James Moseley and S. S. Alsop (who were sureties), to-wit: One in favor of P. A. Dunn & Co. for $500, with interest and costs; and the other in favor of Joseph W. Jenkins for $500, with interest and costs. The debts upon which said judgments were rendered, were promissory notes, made on the 16th and 23d days of August, 1875.

4. That the intestate James Moseley owned no real estate at the time said judgments were rendered, or thereafter, except his homestead, which was allowed and set apart to him on June 2d, 1876, in a tract or parcel of land situate

in Halifax County, containing fifty acres, under executions issuing from judgments of Halifax Superior Court.

5. Said Moseley sold off portions of said homestead tract from time to time, and on the 26th day of June, 1883, he conveyed the remainder thereof, to-wit, forty-six acres, by deed of trust, to one T. N. Hill, trustee, in fee. Default being made by said Moseley in the payment of the debt secured by said deed of trust, Hill, after due advertisement, and in pursuance of the power conferred upon him, sold the premises on the 4th day of February, 1884, and the same was purchased by Spier Whitaker, to whom the trustee made a deed therefor, in fee, February 5, 1884 ; and afterwards, on February 28, 1884, Whitaker conveyed the land to the defendant James R. Horne, in fee, who at once took possession and has been in the adverse possession thereof ever since. The plaintiff, and defendant Mary P. Alsop, seek to sell this forty-six acre tract of land to make assets for the payment of the aforesaid judgments, which they allege are a lien thereon (subject to the homestead interest), and have been since the date of the rendition and docketing of the same as aforesaid.

6. That said Moseley left no widow, but several children, the youngest of whom became twenty-one years of age May 30, 1887.

7. During the year 1877, and ever since that time, the regular terms of the United States Circuit Court for the Eastern District of North Carolina, have been held on the first Monday in June and the last Monday in November in each year.

8. The following executions were respectively issued upon the aforesaid judgments: January 15, 1878 ; *alias,* September 22, 1880 ; *pluries,* August 15, 1883, and again December 10, 1885, and June 21, 1887, upon all of which the Marshal returned, " No property to be found."

The plaintiff moved for judgment directing the sale of that portion of the tract of land allotted to James Moseley for a homestead, conveyed as aforesaid to, and claimed by, defendant Horne. But his Honor being of opinion that no lien existed in favor of the judgment creditor at the time of the conveyance by James Moseley to Hill, trustee, or of the subsequent conveyance by said trustee to Whitaker, and by Whitaker to Horne, the motion was denied.

The plaintiff, and defendant Mary P. Alsop, appealed.

*Messrs. J. M. Mullen* and *R. O. Burton, Jr.,* for the plaintiffs.
*Mr. Spier Whitaker,* for the defendants.

SMITH, C. J. The plaintiff's proceeding assumes that the judgment recovered in the Circuit Court of the United States created liens upon the land allotted as a homestead to the debtor, whose enforcement was suspended during the period of exemption, but now can be, because of its termination and exposure to the claims of the creditors. This is the sole proposition, denied in the ruling below, maintained here in support of the appeal from that ruling.

If these judgments had been rendered in the State Superior Court, and docketed as directed by the statute (*The Code,* § 435), the lien would have attached to the debtor's estate in the land, and, at the expiration of the period of exemption, it could have been subjected to the debts without obstruction from the running of the statute of limitations meanwhile. *Morton* v. *Barber,* 90 N. C., 399, and cases preceding. But, as the judgment did not, *proprio vigore,* under the former practice, bind the debtor's property, unless under process issued and acted on by a sale, and then the lien ran back and bound it as against his own attempted alienation, or putting an incumbrance upon it (*Jones* v. *Judkins,* 4 D. & B., 454; *Harding* v. *Spivey,* 8 Ired., 63), so *The Code,* in introducing a change and giving a lien to the judgment itself,

requires more than a mere rendition to be found in the papers constituting the judgment roll; and to have this effect it must be entered upon the docket as prescribed in section 433, *The Code.* It may be so docketed in other counties, and thus form a lien upon real estate of the debtor situated therein.    *The Code,* § 435.

So essential and imperative is the requirement that the judgment be docketed to create a lien, that it was deemed necessary to pass the Act of 1881, ch. 75, which provides for the transmission of the substantial elements of a final judgment rendered in this Court to the various Superior Courts, and the docketing therein, in order to attach a lien upon the debtor's real estate    *The Code,* § 436.    In like manner, to give the same efficacy to judgments rendered and decrees pronounced in the Circuit and District Courts of the United States, within the State, was passed the Act of 1889, which allows such to be docketed in the several State Superior Courts for the purpose of creating liens upon the debtor's real estate in such counties, to the same extent as docketed judgments of the said Superior Courts, and requires the Clerks of the last-mentioned Courts to docket such transcripts when presented.    This enactment was made to carry into effect an Act of Congress entitled "An act to regulate the liens of judgments and decrees of the Courts of the United States," approved August 1, 1888.

These enactments not only provide for imparting equal efficacy to judgments recovered in the Federal Courts, as is given by State legislation to judgments in the State Courts, but involves a distinct recognition of the necessity of such additional concurrent legislation to create a lien upon the debtor's real estate.    It follows that, previous thereto, no lien grew out of a judgment recovered in the Federal Courts, and it was incidental to, and associated with, the suing out and consummating the final process for its enforcement under the conditions of the former State law.

In *Coughlan* v. *White*, 66 N. C., 102, decided soon after the changes introduced in the new Procedure Act, it is held that an execution issuing upon a judgment recovered in a Court of the United States, whose teste over-reached a judgment in the State Court, was entitled to priority in the distribution of the funds realized under a sale and in the Sheriff's hands.

So, in *Woodley* v. *Gilliam*, 67 N. C., 237, it was held that a sale by the Marshal, under an execution, whose teste, running back to a judgment in the United States Court, prior to the docketing of a judgment rendered in Tyrrell Superior Court, and docketed in the Superior Court of Washington, having preference over the latter, passed the title to the purchaser. These rulings proceed upon the fact that the enactment giving liens to docketed judgments upon the debtor's land, and superseding the lien created by the issue of an execution, did not extend to the United States Court, in regard to which the old law still remained in force. This brings us to an examination of the effect of the act of Congress, approved June 1, 1872, entitled "An Act to further the administration of justice," which, as modified and incorporated in the Revised Statutes, §§ 915 and 916, is as follows:

"Section 915 In common law causes in the Circuit and District Courts, the plaintiff shall be entitled to similar remedies by attachment, or other process, against the property of the defendant, which are now provided by the laws of the State in which such Court is held for the Courts thereof; and such Circuit or District Court, from time to time, may, by general rules, adopt such State laws as may be in force in the State where they are held in relation to attachments and other process: *Provided,* that similar preliminary affidavits or proofs, and similar security, as required by such State laws, shall be first furnished by the party seeking such attachment or other remedy.

"Section 916. The party recovering a judgment in any common law cause in any Circuit or District Court, shall be entitled to similar remedies upon the same, by execution, or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such Courts are held, or by any such laws hereafter enacted, which may be adopted by general rule of such Circuit or District Court; and such Courts may, from time to time, by general rules, adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgment, as aforesaid, by execution, or otherwise."

Does this enactment, perforce of its own terms, adopt the State law, or does it require these modifications to be ascertained and introduced by means of rules sanctioned by the Courts of the United States into their practice? And does the conferred authority extend to the creating of a judgment lien, irrespective of any process emanating from those Courts, to render it effectual and fruitful in results?

The first section, most obviously, is intended to conform the process or mode of proceeding to enforce judgments rendered in the United States Courts to those in use in the State Courts. In terms, it applies to remedies "by *attachment*, or other process," an expression twice used in the section, and clearly limiting its import and operation.

The other section is of wider scope, and adopts all remedies afforded by State laws to judgment creditors who have recovered in the State Court, and extends the same to creditors who have recovered judgments, in common law causes, in the Courts of the United States. Not only are *existing* remedies provided in the several States thus introduced, but the act is expansive, and adapts itself to such as may be provided by future State legislation. Both sections, however, relate to remedial processes, and are intended to harmonize the practice in both jurisdictions, when exercised in the same State.

There may arise some doubt in construing the qualifying clause—"which may be adopted by general rules of such Circuit or District Court"—and determining whether the words are restrictive of both preceding clauses, so as to require the adoption by rule before either becomes operative, or whether they are confined to and limit the next preceding clause only, so as to leave to the United States Courts to adopt such future State enactments as they might deem proper.

With the divers rules of practice prevailing in different States, it would seem quite as important to designate, in the manner suggested, those appropriate to the United States Courts and the practice therein, already in force in the State, as those which legislation might hereafter introduce in order to their harmonious operation. If this be the true rendering of the act of Congress, it is sufficient to say that no such rules of which we are advised have been made for introducing the new *Code* practice into that of their Courts. But, if the restriction be understood to apply only to future changes, we do not see how the enactment can reach the question of a judgment lien, when no process is used in these Courts to enforce it, by execution or otherwise.

The inquiry is not how far back the lien runs when there has been a sale under final process issuing from a Court of the United States, but whether its existence will be recognized in a proceeding in a State Court to convert lands into assets for the payment of a decedent's debts.

We are not prepared to give such potent and far-reaching effect to this legislation, in the absence of any action of the United States Courts, ascertaining and declaring by rules how far the provisions of the State laws are applicable and can be safely introduced into and change the pre-existing system.

The citation from Freeman on Judgments, sections 403 and 404, involves the construction of the Judiciary Act of

1789, which by express words adopted the then existing practice in the State Courts, continued in the subsequent act of 1792. They settled the general pr nciple that when a lien is created by judgment merely entered in a State Court, it will have the same effect when entered in a Federal Court in like circumstances, and this, whether by interpretation of the common law or introduced by statute, because of the assimilation of the practice under the different jurisdictions exercised in the same territory in order to harmony of action. But no such lien exists in this State by the common law under the former practice, and it results only from a statute which prescribes a condition essential to its existence, and that is, that it be *first docketed* in a prescribed manner in each county wherein it is to operate. The judgment contained in the roll has no such effect, as decided at the last term in *Holman* v. *Miller*, 103 N. C., 118. But, until the recent adopting legislation, the act was inapplicable to the Federal Courts, and to give it efficacy in them, not only would the requirement of the docketing have to be dispensed with, but, in analogy, the lien would have to be co-extensive with the territorial jurisdictional limits of the Court, and become a lien upon the real estate in any of the counties constituting the judicial district. To give it this effect, would be in contravention of the purpose of the act in furnishing information of such liens in any county by an inspection of the Superior Court docket. This would be more than to incorporate its provisions into the practice in the Federal Courts— would in fact be legislation itself

The appropriate remedy has been furnished in the late concurring legislation on the subject, and we feel constrained to deny the lien in the present case, and must affirm the judgment.

Affirmed.