CHARLES MOODY et al. v. A. S. JOHNSON.

*Ejectment—Tenants in Common—Recovery by One, as Against Trespasser, Enuring to Benefit of Another.*

1. Where, in an action to recover the possession of land, the plaintiff's testimony demonstrates incidentally the fact that a person, other than the defendant, holds as tenant in common with plaintiff all of the undivided interest not held by the latter, the action enures to the benefit of such co-tenant as against a trespasser claiming sole seizin in himself and relying on an invalid tax deed with possession to show title under adverse right, and entitles the nominal plaintiff to recover possession of the whole for himself and his co-tenant.

2. In an action for the recovery of land plaintiffs claimed title as the heirs and devisees of two tenants in common who originally owned the land; the claimant of the interest of one of the original tenants submitted to nonsuit upon the improper exclusion of a will, under which he claimed, as evidence; of the remaining plaintiffs, heirs of the other original tenant in common, one was a minor, the other two adults; defendant claimed by adverse possession and color of title as against all the heirs and representatives of both the original tenants in common, except the infant plaintiff; in deraigning their title to one-half plaintiff's testimony showed title to the other half in the nonsuited plaintiff; on the trial the Court required the jury to find whether the defendant had acquired title against either the adult or minor plaintiffs, and instructed them if they should find that defendant had acquired title against neither then they should find that his possession of the whole was wrongful: *Held* (1) that such instruction was proper, for a finding

that the defendant had not acquired title by his alleged color, as against any of the heirs of one of the original tenants in common, necessarily established that his possession had not been such as to mature his title against the heirs or devisees of the other original tenant in common; and (2) that judgment in such case was properly given for plaintiffs for title to one-half and for recovery of possession of the whole to enure to benefit of the owner of the other half.

CIVIL ACTION to recover land, tried before *Hoke, J.*, and a jury, at Spring Term, 1892, of Superior Court of MADISON County.

Summons issued in June, 1890. The proof was that of the three children, heirs of Moody, Charles was twentynine at trial, Minnie twenty-five and Roscoe twenty-three— the last having become twenty-one within three years before writ issued. Defendant denied plaintiff's title, and claimed that plaintiffs had not been possessed of land at any time within twenty years before suit brought, and that defendant owned same by occupation for seven consecutive years under color of title.

Plaintiffs introduced (1) grant to John Gray Blount, dated in 1796, admitted to cover land; (2) will of John Gray Blount, dated March 25, 1823, giving power of sale to his executors, Thomas H. and W. A. Blount; (3) deed from said executors to R. and J. R. Love, dated 11th December, 1834, admitted to cover land, and all these instruments being duly proven and registered; (4) deed from J. R. and R. Love, signed in their names by J. R. Love, surviving partner to M. S. Temple, Thomas Johnson and Alexander Williams, dated April 19, 1848, duly proven and recorded (objected to by defendant, and admitted by the Court for one-half interest of party executing deed); (5) record, suit and decree in equity, James Gudger and wife *et al.*, comprising all lands attempted to be conveyed by

said J. R. Love since death of Robert Love (defendant admitted decree regular in form; contends same inadmissible, because neither defendant nor those under whom they claim were parties to said proceedings; overruled, and defendant objected and excepted); oral proof offered showing *locus in quo* included in description of pleadings and decree; (6) deed from M. S. Temple to Thomas Johnson and C. D. Williams, dated December 5, 1855, duly proven and registered, including land; (7) deed from Thomas Johnson to H. M. Moody for his interest in said land, duly proven and registered, dated February 6, 1866; (8) death of H. M. Moody in March, 1870, leaving children plaintiffs as above set forth—twenty-nine, twenty-five, twenty-three—the last twenty-one within three years before suit brought; (9) will of Alexander Williams, dated April 11, 1843, proven in 1852, devising land to C. D. Williams, his wife, and proved that C. D. Williams never married again (defendant objected, and the Court ruled that the probate was not sufficient to pass real estate in North Carolina, and this interest was withdrawn from consideration of jury as to title); (10) will of C. D. Williams, dated December, 1868, empowers David Sevier and J. W. Deadrick, executors, to sell and convey land, and duly registered; (11) deed from executors to Ephraim Link, dated May 19, 1888, conveying one-half same tract, and duly registered; (12) deed from Ephraim Link to plaintiff M. P. Reeves for same land.

The defendant offered a tax title or deed from tax-collector dated in 1879 on tax sale in 1874. Registered. Admitted same deed not for title, but claimed under same a color of title; admitted by Court for last purpose over plaintiffs' objection.

Defendant offered evidence tending to show that neither plaintiffs nor those under whom they claimed had been in possession of said land at any time within twenty years

before suit brought—before their entry in 1890, but that defendant had continuously occupied said land for such period, claiming to own same, or that defendant owned said land, or five-sixths thereof, by occupation for seven consecutive years under tax deed. Plaintiffs denied there was any such occupation by defendant as would mature his title, and offered evidence tending to show that said occupation, while it existed, was permissive on part of defendant as agent of plaintiffs' interest; and, among other evidence, introduced a contract showing occupation by Johnson, or his father, under Moody under a contract for five years, terminating in 1871, and within twenty years before this suit brought. There was other evidence of plaintiffs and defendant on this question.

The following are the issues submitted and the responses thereto:

1. Have plaintiffs, or those under whom they claim, been seized or possessed of the lands sued for within twenty years next before action was brought? Answer. Yes.

2. Are plaintiffs owners of the land sued for? A. Yes, as to one undivided half.

3. Is defendant in wrongful possession of said land? A. Yes.

4. What damage are plaintiffs entitled to recover? A. One hundred and seventy-five dollars.

The Court, among other matters not excepted to, charged the jury:

"1. That plaintiffs had shown a line of deeds which would place title to one-half property in three Moody children, nothing else appearing, and the other half in Alexander and C. D. Williams and those who represent them, and this last half being shut out by ruling of Court in the Alexander Williams will, would be no longer considered by the jury.

"2. That defendant claims this title to the one-half claimed by Moody children cannot avail them, because neither plaintiffs nor those under whom they claim have been at any time seized or possessed of said land within twenty years before action brought, but that defendant had, during such period, occupied the property, claiming to own it, and had been in the sole and exclusive possession of same for this time, and if defendant had been in the sole and exclusive possession of said property for said period, and his occupation commenced before the death of H. M. Moody, plaintiffs' claim to property would be barred, and jury should answer first issue, 'No.'"

Plaintiffs replied, and claim that said occupation would not ripen defendant's title, because it was (1) permissive under contract of five years, terminating in 1871; (2) under an agency for Mrs. Moody and her children; (3) said occupation was not continuous; (4) it was abandoned as much as one year continuously; (5) it was surrendered.

The burden of the first issue was on plaintiffs. The Court adverted to all the evidence pertinent to the issue, and told the jury that defendant's occupation must be continuous for twenty consecutive years, and if such was its character—not vacant for any time during said period for a year and more—nor permissive as agent, nor surrendered to plaintiffs or those under whom they claimed within twenty years before action brought, answer to first issued should be, "No." If, however, said occupation was not continuous, *i. e.*, vacant for a length of time as much as a year, or if it was permissive, or abandoned, or surrendered within twenty years, answer to first issue should be, "Yes."

If first issue answered "No," and said occupation of defendant took its rise prior to death of H. M. Moody, then the jury should answer second issue, "No." Where statute began to run it would continue against children, even the minors.

If jury should answer first issue, "Yes," and occupation took its rise after H. M. Moody's death, then jury should answer, "Yes, one undivided half ($\frac{1}{2}$) one undivided sixth ($\frac{1}{6}$)," as the jury should find the fact to be under the further charge of the Court—

5. The defendant claims five-sixths of the land, all except Roscoe Moody's interest, under color of title and possession. Tax deed was color of title, and defendant admits same took its rise in 1879 (such was defendant's admission made in open court by his counsel). To avail defendant such possession must be adverse under claim of right, open, continuous, uninterrupted. If defendant while he occupied claimed as plaintiffs' agent, his occupation would not be adverse, or if defendant represented himself as agent and acted so as to put the plaintiffs off their guard designedly and with intent to conceal his claim. The evidence pertinent was here given. If defendant occupied under his tax deed for seven consecutive years, claiming to own it, jury should answer to second issue, "Yes, one undivided sixth ($\frac{1}{6}$)." If defendant had not so occupied property for such period then claim under color fails, and jury should answer second issue, "Yes, one undivided half."

The Court further charged the jury, if answer to second issue was one-sixth, then answer to third issue should be only as to one undivided sixth. If answer to second issue was "One-half," then jury should answer third issue, "Yes," because in the last event defendant would be a trespasser, and not having connected himself with any interest in common source of title, would not be permitted to maintain or justify his occupation.

There was no exception to charge on question of damages. On the verdict defendant moved for judgment for one-half the property. Refused, and defendant excepted. Moved for new trial for error of Court on its rulings in

questions of evidence and for error in the charge. Over-
ruled. The Court gave judgment for the plaintiffs for the
recovery of the land, and defendant appealed, assigning
errors as follows:

1. The Court admitted in evidence the record and deed
above marked as objected to by the defendant.

2. That the Court erred in submitting the question to the
jury as to whether or not the defendant acknowledged the
claim of plaintiff Reeves or surrendered possession to him,
or to any one under whom he claimed, for there was no
evidence to support such instruction.

3. The Court instructed the jury that the defendant's
claim of title could not avail him as color of title until his
possession under the tax deed had continued for seven con-
secutive years.

4. The Court charged the jury that if they answered the
first issue, "Yes," and the second issue, " Yes, as to one-half,"
then they should answer the third issue, "Yes," and no
more—for in that event the defendant would be a mere
trespasser, and the plaintiffs could recover the whole prop-
erty.

5. The Court erred in refusing to give judgment for the
defendant for one-half of the land in dispute, and in giv-
ing the plaintiffs judgment for the recovery of the whole
land, and when they had shown title to only one-half and
the jury found that they were the owners of only one undi-
vided half of the land in dispute.

*Mr. T. R. Purnell,* for plaintiffs.
*Messrs. Gudger & Martin,* for defendant.

AVERY, J.: Where the testimony relied on in an action
for the possession of land to establish the plaintiff's title
demonstrates incidentally the fact that a person or persons,

other than the defendant, hold as tenants in common with
plaintiff all of the undivided interest not held by the
latter, the action enures to the benefit of such co-tenants
as against a trespasser claiming sole seizin in himself,
entitling the nominal plaintiff to recover, for himself and
them, the whole. *Allen* v. *Sallinger*, 103 N. C., 14;
*Gilchrist* v. *Middleton*, 107, N. C., 663; *Foster* v. *Hackett*, at
this Term.   When in deference to the ruling of the Court,
whether erroneous or not, the co-plaintiff Reeves submitted
to judgment of nonsuit and appealed, the subsequent pro-
ceedings must be considered just as though Reeves had not
joined the heirs of H. M. Moody, but the action had been
originally brought and subsequently prosecuted by them
only.   The whole of the land in controversy was covered
by the grant to John Gray Blount and was transmitted by
successive conveyances to M. S. Temple, Thomas Johnson
and Alexander Williams, whereupon said Temple conveyed
his undivided third to said Johnson and Williams.   A
paper-writing had been offered purporting to be a copy of
the will of Alexander Williams, in which he devised his
undivided half interest to his wife, C. D. Williams.   If this
instrument had been admitted the will of C. D. Williams,
the evidence that she did not marry again and the deed of
her executor, acting under a power contained in her will,
to Link, with Link's deed to Reeves, would have shown
*prima facie* title in Reeves as tenant in common with the
plaintiffs and transmitted from the same source.   After
eliminating the evidence offered to trace title to one
undivided half from Alexander Williams to Reeves, the
testimony, if sufficient—as the jury determined it was—to
show that the title to the other undivided half passed by
successive conveyances from John Gray Blount to the plain-
tiffs, necessarily demonstrated the fact that the heirs or
assignees of Alexander Williams, though there was no

evidence tending to designate or identify them, succeeded to his rights and held through the same line of mesne conveyances a half interest in common with the three children and heirs at law of H. M. Moody. If the heirs of H. M. Moody had not been able to ascertain whether any or, if so, what disposition had been made by Alexander Williams of his interest, they could sue for the whole in their own names without explanation or with a specific averment that they were bringing the action in behalf of the heirs at law of Alexander Williams, who were not known by name or too numerous to mention, and in either way, upon showing, incidentally to the deraignment of their own title, that Alexander Williams was the owner of the other undivided half, and that he was dead, might recover the whole as against a trespasser denying the plaintiff's title in his answer and relying on a deed with possession to show title under an adverse right. *Foster* v. *Hackett, supra.* The recovery would ultimately enure to the benefit of those who might show title through him whether by descent or purchase.

The defendant claimed under a Sheriff's deed for taxes, adverse in its very incipiency to the claim of the heirs of Moody and the representatives of Alexander Williams. He was, therefore, at the beginning of his occupancy a trespasser, setting up an invalid tax deed under which he might acquire title by the laches of the true owners. If his possession did not ripen his title to the whole or any part, then he continued to be a trespasser up to the moment when the action was brought. The instructions of the Court upon the three issues were well calculated to enable the jury to apply the law to the testimony and arrive at and announce their conclusion not only as to what was the actual interest of the plaintiffs, but whether the defendant was a trespasser or co-tenant.

There was a conflict in the evidence bearing upon the question whether the defendant entered and put the statute in motion before the death of H. M. Moody, in which event it would have continued to run against his infant child, or whether the occupancy began after his death, which occurred in the year 1870, so as to relieve the youngest child, who had arrived at maturity within three years before the summons issued, from the bar of the statute. It was therefore the province of the jury to determine, as they were told to do, whether the plaintiffs were in fact entitled in their own right to one undivided half, or whether the rights of all except the youngest child were barred. It was the duty of the Court to require such specific findings in order to protect the rights of the parties against the effect of the estoppel of the judgment, and to enable the infant heir, if all others were barred, to recover his interest. *Allen* v. *Sallinger, supra; Dickens* v. *Long*, 109 N. C., 165. If, instead of responding to the second issue, "Yes, as to one undivided half," the jury had answered that the youngest of the heirs of H. M. Moody was the owner of one undivided sixth, then, under the instruction of the Court, it would have been their duty to find, in passing upon the third issue, that the defendant was not a trespasser, because his title had matured by possession against all of the heirs who were not laboring under disability. If such had been the findings there would have been error in rendering a judgment for the whole, because it would have been apparent to the Court that the defendant had acquired by possession, and one of the plaintiffs by descent, such interest as entitled that particular plaintiff to be let into possession only to the extent of his interest with the defendant.

But when the jury found that the defendant's possession was still wrongful it necessarily meant that he could have

acquired no interest whatever by color of title, because if
he had occupied seven years continuously, either before or
after the death of H. M. Moody, he must have acquired
under the instruction given, as against those heirs, all but
one undivided sixth held by the youngest. It followed,
therefore, that if the jury determined that the two older
Moody heirs were not bound by the defendant's possession
it could not have been an occupancy of such nature and
duration as to mature title against the heirs or representa-
tives of Alexander Williams, to whom the plaintiffs, in the
deraignment of their own title, had traced the other undi-
vided half.

The case of *Lenoir* v. *Mining Co.*, 106 N. C., 473, which
was cited to sustain the contention of the defendants, is
not analogous to this. The plaintiffs there sued for the
whole, while the defendants in their answer set up title to
one undivided third of the land and admitted that the
plaintiffs were co-tenants with them. The plaintiffs there
offered paper title to one undivided third and testimony
tending to show title in themselves to the other interest
also, but by possession under color. No evidence was sub-
mitted tending to prove that any person other than the
plaintiffs could deraign title from the same source to the
other two-thirds. The defendant did not offer a regular chain
of title, but introduced a paper purporting to convey to it one
undivided half interest in order to show color of title and
testimony tending to prove possession under it. As between
the co-tenants it was held that the defendant could estab-
lish his title to an undivided one-third by possession under
color, and that while a co-tenant could not be barred by
adverse occupancy for a shorter period than twenty years
still a possession might be adverse to some undivided inter-
ests, so as to mature title in seven years as to them, though
not adverse as to others.

In our case, though the defendant claimed sole seizin, the Judge who presided in the Court below, with a very clear perception of the difference between the two, submitted the second issue in two aspects of the testimony, and made the finding on the third conform to the response to the second. If the defendant's title had not matured as to either of the three plaintiffs then, *ex necessitate*, it followed that he had acquired nothing by his occupation, and was still a trespasser as to the plaintiffs and all who were shown to have derived title from the same source. If the defendant had acquired title as to two-sixths he was not a trespasser, but a co-tenant and *non constat*, but that his occupancy had ripened into title as to Williams' half interest also. So if the answer to the second issue had been "One-sixth" that to the third would have been "No," and the judgment would in that event have ordered that the youngest of the three plaintiffs be let into possession with the defendant.

The practical difference between the present status of the case and that which would have been presented had the will of Alexander Williams been admitted and the finding followed that Reeves and the Moody heirs were the owners, is that, now, the plaintiffs may be concluded by an adjudication from denying that the title to one undivided half interest descended to the heirs and devisees of Alexander Williams, and that the plaintiffs are the owners of the other half.

The judgment of nonsuit being set aside and a new trial granted, the plaintiff Reeves may, on motion, have the decree amended so as to declare that title to one-half descended to the heirs or passed to the devisees, if any, of said Williams, and that plaintiffs hold the other half in fee. If the heirs of Moody do not contest the right of Reeves he can again submit to nonsuit and enter with them. If they resist his claim, or if he prefers to have the

matters adjudicated so as to operate by way of estoppel, he can have the cause, as to all of the parties before the Court, retained till it shall have been ascertained by a jury whether the interest of Alexander Williams has been transmitted by mesne conveyances to him.

For the reasons given we hold on the defendant's appeal there was                                                                No Error.