J. M. BERNHARDT, et al. v. GEORGE W. BROWN, et al.

*Process, Modes of Service of—Publication—Proceeding in Rem — Judgment — Collateral Attack — Presumption — Execution — Junior Judgments — New Trial—Hearing of Motion—Setting Out Exceptions to Charge—Practice — Judgments of Supreme Court — " New Trial" and " Reversed"—Motion to Modify Judgment of Supreme Court.*

1. There are three modes for the " due service of process "—(1) By actual service (or in lieu thereof, acceptance or waiver by appearance) ; (2) By publication, in cases where it is authorized by law, in proceedings *in rem*, in which cases the court already has jurisdiction of the *res*, as to enforce some lien on or a partition of property in its control ; (3) By publication of the summons, in cases authorized by law, in proceedings *quasi in rem*, in which cases the court acquires jurisdiction by attaching property of a non-resident, absconding debtor, &c. A judgment obtained under process served by the two last-named methods has no personal efficiency, but acts only on the property.

2. A proceeding to enforce a mechanic's lien being *in rem*, the service of summons by publication is authorized by Section 218 (4) of *The Code*, if defendant cannot, after due diligence, be found in the State, whether he is a non-resident or a resident.

3. In an action to enforce a mechanic's lien, and in all other proceedings *in rem*, it is not necessary, as in proceedings *quasi in rem*, to acquire jurisdiction by actual seizure or attachment of the property, the mere bringing of the suit in which the claim is sought to be enforced being equivalent to seizure.

4. While the purchaser of land under a junior judgment may not collaterally attack prior judgments for irregularity, he may do so if they are void, because of being rendered without service of process, in any mode prescribed by law.

5. A judgment, when collaterally attacked, will be presumed valid in the absence of a transcript of the proceedings in which it was rendered.

6. Prior to the passage of the Act of 1889, (Ch. 108,) there was no provision for service upon a domestic corporation whose officers and agents could not be found in the State, (except in the instances mentioned in Section 218 (2) and 218 (4) of *The Code*,) and hence a judgment against such corporation on substituted service of summons is void.

7. It is within the power of the Legislature to prescribe that service of process on parties residing in the State may be had by publication when such parties cannot, after due diligence, be found, not only in cases where they have left the State or have concealed themselves therein, with intent to defraud creditors or avoid service of summons, but also when such intent cannot be shown.

8. The Act of 1889, Ch. 108, authorizing service of summons by publication against a domestic corporation whose officers cannot, after due diligence, be found in the State, omitted to amend the attachment law, (Section 349 of *The Code*,) so as to authorize an attachment of defendant's property in such case, and hence, no attachment being authorized by law, the attempted service of a domestic corporation by publication of summons and warrant in attachment proceedings was insufficient for any purpose.

9. While it is the better practice that the grounds of exceptions to the judge's charge should be set out on the motion for a new trial, so as to afford him an opportunity, on fuller reflection, to correct any errors committed by him, and save the delay and expense of an appeal, yet such course is not necessary, and it is sufficient if such exceptions be set out in the case on appeal.

10. The holder of a senior judgment has no power to forbid a sale of land under an execution on a junior judgment.

11. The purchaser of land at an execution sale under a junior judgment gets the title of the defendant, subject only to the encumbrance of the senior judgments ; if executions on the senior judgments are in the hands of the sheriff at the time of the sale advertised under the junior judgment, the purchaser will get a full title to defendant's interest, and the lien of the senior judgments is transferred to the proceeds of sale.

12. When, on appeal, error is found as to the proceedings on the trial of a cause below, anterior to and including the verdict, this Court can only declare error and order a new trial, but but when the error is solely in the judgment rendered upon an admitted or ascertained state of facts, then, and in such case only, can this Court order the judgment below to be *reversed.*

13. This Court will not, on motion, amend its judgment ordering a " new trial," which was based on errors of the court below, anterior to and including the verdict, by directing the judgment to be " reversed," upon the assumption that the errors, for which the new trial is granted, are so vital that the appellee will, in deference to the ruling of this Court, submit to a final judgment without amending his pleadings or adducing new evidence.

CIVIL ACTION, for the recovery of land, and to determine conflicting titles to the same, tried before *Bryan, J.,* and a jury, at Fall Term, 1895, of BURKE Superior Court.

It was admitted that both parties claimed under the North Carolina Estate Company (Limited) and that the land in controversy had been conveyed to the company by deed in June, 1886.

In response to issues submitted, to which there were no exceptions, the jury found that there had been two execution sales of the land in controversy; that, at the first sale, made May 6, 1889, when the defendant, George W. Brown, purchased, the sheriff sold under four executions; that, at the second sale, made July 8, 1890, when the plaintiffs (or John Paalzow under whom they claimed) purchased, the sheriff sold under only one execution, and that an execution issued on a judgment in favor of John Paalzow. The executions under which the first sale was made, issued on judgments in favor of A. H. Wilson, the Shuford Hardware Company, Dunovant & McConnaughey and Brown & McDowell, all against the North Carolina Estate Company, Limited.

The A. H. Wilson judgment was rendered in the superior court of Burke county on the 4th day of March, 1889, in an action brought by him for the enforcement of two mechanics' liens, filed July 16, 1888, against certain town lots in Glen Alpine, for work and labor done thereon. This judgment was for $359.60 and costs, and the same was declared a lien on said lots from July 16, 1888, the date of filing said liens. The execution which issued on this judgment, March 30, 1889, declared the same a lien from July 16, 1888, on said lots, and ordered the sheriff to sell said lots to pay the same. The other three judgments were justices' judgments in attachments, and were declared to be liens upon the land in controversy and upon the Glen Alpine lots. The judgment in favor of Dunovant & McConnaughey and the Shuford Hardware Company were both rendered the same day, and transcripts issued and docketed the same day. In each of these cases a warrant of attachment was issued the same day, and levied by the sheriff the same day, January 24, 1889, upon the land in controversy, and upon the Glen Alpine lots. Judgments were

rendered in these two actions on February 22, 1889, and transcripts docketed in the superior court of Burke county, February 25, 1889. The judgment in each of these actions was declared a lien upon the land in controversy, and upon the Glen Alpine lots. Executions issued on these two judgments from the superior court of Burke county, on the Shuford judgment, April 1, 1889, and on the Dunovant & McConnaughey judgment, May 1, 1889. The judgment in favor of Brown & McDowell was rendered April 6, 1889. The warrant of attachment had been issued, and the same was levied upon the land in controversy, on March 8, 1889; and the judgment was declared an attachment lien on the said land and lots, and a transcript of said judgment was docketed in the superior court May 1, 1889, and execution issued May 1, 1889. Under executions issued on these four judgments the land in controversy was sold May 6, 1889, and defendants purchased. There was no personal service of summons upon the North Carolina Estate Company, Limited, in any of these cases, but in all of them there was constructive service by publication. In three of them an attachment levied upon the land in controversy and publication thereof; in the other, a statutory lien upon the Glen Alpine lots and publication. At the sale May 6, 1889, when the defendants purchased, under these four executions, the Glen Alpine lots were first sold, and realized $200, which was not sufficient to discharge the A. H. Wilson execution, which was the first lien thereon. At the second sale, made July 8, 1890, when the plaintiffs purchased, the sheriff sold only under one execution, issued from the superior court of Catawba county March 8, 1890, on a judgment in favor of John Paalzow against the same company, rendered in said court at spring term, 1890, a transcript of which was received and docketed in Burke county, March 10, 1890.

From the judgment rendered on the verdict for the defendants, the plaintiffs appealed.

*Messrs. J. G. Bynum, J. T. Perkins, G. N. Folk* and *Edmund Jones*, for plaintiffs (appellants).

*Messrs. Shepherd & Busbee, S. J. Ervin* and *Isaac T. Avery*, for defendants.

CLARK, J.: " Due process of law " requires that service of process shall always be made.  There are three modes in which this can be done.

1. By actual service (or, in lieu thereof, acceptance of service or a waiver of service by an appearance in the action).  Whether actual service shall be made by reading the summons, or notice to the defendant, or leaving 'a copy with him personally or at his usual place of residence, is for the Legislature to prescribe.  *The Code*, Sections 214, 217, 597.

2. By publication of summons in cases in which it is authorized by law, in proceedings *in rem*.  In these cases the Court already has jurisdiction of the *res*, as to enforce some lien or a partition of property in its control or the like, and the judgment has no personal force, not even for the costs being limited to acting upon the property.

3. By publication of the summons, in cases authorized by law, in proceedings *quasi in rem*.  In those cases the court acquires jurisdiction by attaching property of a non-resident, or of an absconding debtor and in similar cases, and the judgment has no personal efficiency, extending no farther than its enforcement out of the property seized by attachment.

Proceedings in divorce are *sui generis*, as the judgment therein merely declares a personal status and publication of the summons is allowed without the acquisition of jurisdiction by attachment of property, the Court having

118—45

jurisdiction of the person of the plaintiff. The Wilson judgment to enforce a mechanic's lien was a proceeding *in rem,* and service by publication was authorized by *The Code,* Sec. 218 (4). In *Pennoyer* v. *Heff,* 95 U. S., 714, it is said, " Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the State, or of some interest therein, by enforcing a contract or *lien respecting the same,* or to partition it among different owners, or, where the public is a party, to condemn and appropriate it for a public purpose." This is cited and approved in *Winfrey* v. *Bagley,* 102 N. C., 515, and *Long* v. *Ins. Co.,* 114 N. C., 465. In proceedings under this class—proceedings *in rem*—it is not necessary, as in proceedings *quasi in rem,* to acquire jurisdiction by actual seizure or attachment of the property, but " it may be done by the mere bringing of the suit in which the claim is sought to be enforced, which in law (in such cases) is equivalent to a seizure, being the open and public exercise of dominion over it for the purposes of the suit." *Heibeitter* v. *Elizabeth Oil Co.,* 112 U. S., 294. And as to this class of cases, the statute prescribes publication of the summons whether the defendant is a non-resident or a resident whenever, " after due diligence he cannot be found in the State." *The Code,* Sec. 218 (4); *Claflin* v. *Harrison,* 108 N. C., 157. His Honor, however, properly instructed the jury, as prayed, that a sale under the Wilson judgment could pass no title as to any of the property of the defendant in such judgment other than the property covered by the mechanic's lien.

The plaintiff could not collaterally attack the three justice's judgments under which the sale of May 6, 1889, was alleged to have been made, for irregularity, but he has the right to insist that they are void, if there was no service of process in such cases in any mode prescribed by

BERNHARDT *v.* BROWN.

law, having acquired his own rights by purchase under a junior judgment. The defendant in such justice's judgments was not served personally and being a resident of this State, i. e., a domestic corporation, could not, till the Act of 1889, be served by publication except in the instances mentioned in *The Code*, 218 (2) and 218 (4). The Acts 1889, Ch. 108, extended these instances by providing that where the defendant is a corporation created by or organized under the laws of this State, and no officer or agent thereof upon whom service of process can be made can after due diligence be found in the State, and that fact is duly made to appear by affidavit to the satisfaction of the clerk of the superior court of the county, in which such process was issued, such clerk shall grant an order that service of such process may be made by publication in the manner therein provided. This Act was ratified 13th of February, 1889. Until the passage of this Act there was no means provided for service of process against a domestic corporation whose officers and agents could not be found. It was simply a *casus omissus.* Service could be had upon non-resident defendants and corporations by publication of summons when personal service could not be had, provided jurisdiction was procured by attachment of property, *The Code*, 218 (1) and 218 (3); *Long* v. *Ins. Co., supra,* and against residents and non-residents alike, (when personal service could not be made,) to enforce a lien or interest in property in this State and in actions for divorce, *The Code*, Sec. 218 (4) and 218 (5); and against residents of the State, (who could not after due diligence be found,) when they had departed from the State with intent to defraud creditors, or to avoid service of summons, or kept themselves concealed in the State with like intent (*The Code*, 218 (2),) in which case also attachment of property is the basis of the jurisdiction. *The Code*, Sec. 349. There can be no ques-

tion that the State has the right to prescribe that service upon parties residing here · can be made by publication when such parties cannot after due diligence be found, not only in those cases in which it can be averred by affidavit that they have departed this State, or have concealed themselves herein, with intent to defraud creditors or avoid service of summons, but also in cases where such intent cannot be averred, and certainly it is competent for the Legislature to provide that, as to a corporation created by it, if no officer or agent of such corporation can be found in the State, then service can be had by publication, otherwise creditors would have no redress if a domestic corporation should keep the names of its officers concealed, or should elect officers living outside of the State. It might, as in this case, own large bodies of land, and creditors would be powerless to secure service of process, and even stockholders could not begin proceedings, in a proper case, for the appointment of a receiver. But till the Act of 1889 there was such defect and two of the justices' judgments are void because they were taken 22nd February, 1889, and there was not the service by advertisement for four weeks under authority of the Act of 1889, since that Act was not ratified till 13th February, 1889. The other judgment was taken April 6, 1889, and in the absence of the transcript of the proceedings therein, the presumption of law is that it is regular in all respects, including service but it appears that there was no personal service of the summons, and, though the Act of 1889, authorized publication of the summons against a domestic corporation whose officers cannot be found in the State, unfortunately the Legislature omitted to amend the attachment law (*The Code*, Sec. 349,) so as to authorize an attachment of the defendant's property in such case, and as we have seen, substituted service in such cases can only be based upon the

seizure of property, it being a proceeding *quasi in rem.* No attachment having been authorized by law, the proceeding was merely *in personam*, and jurisdiction could not attach by mere publication, and the attempted service in that mode was insufficient for any purpose. *Winfree* v. *Bagley*, *supra.* The Act of 1889 was needed to supply a *casus omissus*, and the authority of the Legislature to enact it cannot be controverted, but, doubtless by an inadvertence, the Act did not amend the attachment law so as to give a basis for jurisdiction to proceed against the property of the defendant in such cases, and the courts cannot supply the defect in the Act. Recourse must be had to the Legislature.

While it is a good and convenient practice to set out the grounds of exception to the judge's charge on the motion for a new trial before him, to the end that on fuller reflection he may have the opportunity to correct the errors, if any, committed by him, and save the parties the delay and expense of an appeal, this is not absolutely required, and it is sufficient if the exceptions to the charge are set out in the appellant's statement of the case on appeal. *McKinnon* v. *Morrison*, 104 N. C., 364; *Lowe* v. *Elliott*, 107 N. C., 718; *Blackburn* v. *Insurance Co.*, 116 N. C., 821; Supplement to Clark's Code, p. 64.

It is not necessary to notice the exceptions made other than those involved in the above discussion, but as the point was earnestly debated before us, we may note that the 6th instruction given by the court was erroneous, for although the Paalzow judgment was a junior judgment —conceding for the argument that the three justice's judgments were valid—the holder of the senior judgments had no power to forbid a sale under the junior execution, and the purchaser at a sale under an execution issued upon a junior judgment gets the title of the defendant in the

execution subject only to the encumbrance of the senior judgments. *Worsley* v. *Bryan*, 86 N. C., 343; *Halyburton* v. *Greenlee*, 72 N. C., 316; *Isler* v. *Colgrove*, 75 N. C., 334. If the executions on the senior judgments are in the sheriff's hands at the time of the sale, the purchaser gets full title and the lien of the senior judgments is transferred to the proceeds of the sale. *Cannon* v. *Parker*, 81 N. C., 320; *Gambrill* v. *Wilcox*, 111 N. C., 42.

New Trial.

After the opinion in this case was handed down, the plaintiff appellant moved to modify the judgment at this Term.

CLARK, J.: In this case the Court having found error in the instructions to the jury and to the rulings upon the admission of evidence, as pointed out by the exceptions, directed a new trial. This is a motion to correct the judgment and have the Court to enter a judgment here and reversing the judgment below. It is true that if this Court reverses or affirms the judgment below, it may in its discretion enter a final judgment here or direct it to be so entered below. By preference, and as a matter of convenience, the latter course is, unless in very exceptional cases, the course pursued, especially since the Act of 1887, Ch. 192, which provides that an appeal does not vacate but merely suspends the judgment appealed from. To enter a final judgment here would necessitate the issuance of execution from this Court, which can be more conveniently issued from and returned to the court below.

It is true that when by inadvertence the opinion of the Court granting a new trial is closed with the entry "Reversed" or *vice versa*, or in the case of any other inadvertence of like character, the Court, on motion, even

at a subsequent Term, will correct the judgment to correspond with the opinion. *Scott* v. *Queen*, 95 N. C., 340 ; *Cook* v. *Moore*, 100 N. C., 294 ; *Summerlin* v. *Cowles*, 107 N. C., 459. But there could be no inadvertence in ordering a new trial in this case, since error was found in the rulings upon which the verdict was rendered. When the facts are settled by consent, or by case submitted on agreement, or the facts are found by the Court, or even by a verdict, when the only error suggested is that, upon the facts found, taking them as conclusive and unexcepted to, a different judgment should have been entered by the court below, then this Court, if of that opinion, will adjudge that such judgment be reversed. But it is only in cases in which the facts are fixed and the only controversy is that the judgment rendered upon such state of facts is erroneous, that this Court can adjudge " Reversed." In the present case, the errors affected the proceedings and went into and brought about an erroneous verdict. The mover, however, insists that the error is so vital that this Court can see that on its correction the verdict on the next trial must be for the opposite party. It may be so. It may also be true that on the next trial there may be amendments to the pleadings or new evidence brought forward. The Court cannot consider argument as to the possibility or probability of such changes. If the error declared by the Court is vital and irremediable, then on the new trial below the appellee will simply, in deference to our ruling, submit to a final judgment. This Court cannot enter or direct "judgment reversed" upon the assumption that the appellee will be compelled to take that course. When, on an appeal, error is found as to the proceedings anterior to and including the verdict, we can only declare error and order a new trial. When the error

IN THE SUPREME COURT. [118

is solely in the judgment rendered upon an admitted or ascertained state of facts, then and in such cases only can we order the judgment below to be *reversed.*

Motion Denied.