J. M. BERNHARDT et als. v. G. W. BROWN, et als.

(Decided April 19, 1898).

*Action to Recover Land — Trial—Evidence—Tracing Title—Deed—Exceptions in Deed—Deed Absolute in Form as Security for Debt—Fraudulent Conveyance —Registration—Execution — Docketing Judgment— Collateral Attack.*

1. Where, in an action to recover land, the parties claimed title from a common source and on appeal the assertion of such title by the defendants was adjudged invalid, such adjudication does not set them free, in a subsequent trial of the action, to assert a superior title in some one else with whom they do not connect themselves.

2. Where, in an action to recover land within the boundaries of plaintiff's

BERNHARDT *v.* BROWN. ·

deed, the defendant claims the same under exceptions in such deed, it is incumbent on the defendant to bring himself within the exceptions by proof.

3. While payment of taxes is some evidence of title, it is unavailing in the trial of an action to recover land when the party offering it has not connected himself with any outstanding title or shown adverse possession of the land for the requisite time.

4. A deed absolute on its face, but intended as a security for a debt, is void as against the creditors of the grantor.

5. Where, in the trial of an action to recover land, the plaintiffs contended that a deed under which the defendants claimed, although absolute on its face, was really a mere security for a debt, and therefore void, an unregistered deed of defeasance and bonds secured thereby produced by the defendants in pursuance of an order of Court, under Sections 578 and 1373 of *The Code*, were competent as evidence tending to show the nature of the transaction, without proof of their execution.

6. The probate of a deed of a corporation by the acknowledgment of individuals instead of by its officers, is fatally defective and its registration, in consequence, is a nullity.

7. Where the probate and registration of a deed under which defendants claim, in an action to recover land, were defective, a reprobate and reregistration after the plaintiffs' title accrued, and after the institution of the action, can have no effect (Conner's Act, Section 1, Chapter 147, Acts of 1885).

8. The proceedings under a voidable execution cannot be collaterally attacked.

9. The docketing of a judgment is not an essential condition of its efficacy, except for the purpose of giving a lien, nor a condition precedent to issuing an execution thereon to the Sheriff of the County where it was rendered or to any other county.

10. The requirement in Section 448 of *The Code* that the date of docketing the judgment should be stated in the execution is directory.

11. A recital, in an additional paragraph in an execution issued to B county, of a levy on certain personal property in C County (where the judgment was rendered) and an order to the Sheriff of the former County to sell it (although an attachment against such personal property had been vacated) was a clerical error which did not invalidate the other part of the execution, and strangers to the execution cannot complain of such recital.

BERNHARDT v. BROWN.

CIVIL ACTION to recover land tried at June, 1897, Special Term of BURKE Superior Court before *Robinson*, *J.*, and a jury. There was a verdict for the plaintiff and defendants appealed from the judgment thereon. The facts necessary to an understanding of the opinion sufficiently appear therein.

*Messrs. J. T. Perkins* and *Edmund Jones* for plaintiff.
*Messrs. S. J. Ervin* and *Avery & Avery* for defendants (appellants.)

CLARK, J.: Upon the complaint and answer it appears that both sides claim under the "North Carolina Estate Company, Limited". The 8th prayer for instruction by the defendants is that, ordinarily, when it is shown that both parties hold through a title from a common source it is not necessary to go beyond the common title, unless a superior title be shown by one of the parties with which he connects himself by a chain of title, but in this case the title of the defendants derived from the common source having been adjudged void (upon the former appeal in this case), the defendants are not estopped from showing a better outstanding title in any person other than the common source of title. There is not a scintilla of evidence connecting the defendants with any outstanding title; and upon their pleadings they are estopped to deny the common source of title. The fact that their assertion of having that title in themselves has been adjudged invalid in this action, does not set them free now to assert a superior title in some one else with whom they do not connect themselves. But, if it did, it would not avail the defendants, as the holders of the alleged outstanding title of a past interest, if such were shown, would be merely ten-

ants in common with the plaintiffs who can therefore recover as against these defendants. *Moody* v. *Johnson*, 112 N. C., 804; *Gilchrist* v. *Middleton*, 107 N. C. 663 Therefore, it is unnecessary to consider any of the exceptions in this case as to matters prior to the common source of title. The title was shown to be out of the State.

The defendants except because "5,000 acres being excepted from the grant of 1795 under which the plaintiff's claim, the burden is on the plaintiffs to show that the land sued for is not the excepted part." The law is well settled otherwise. "The *locus in quo* being within the boundary of plaintiff's deed and defendant claiming under exceptions in said deed, it is clear that it is incumbent on him to bring himself within the exceptions by proof". *Steel & Iron Company* v. *Edwards*, 110 N. C., 353; *Gudger* v. *Hensley*, 82 N. C., 481. Besides, the complaint is to recover "the lands remaining unsold and not excepted from the boundaries of the grant" and the answer says the defendants "are in possession of the land sued for and in controversy."

Payment of taxes is some evidence of title (*Austin* v. *King*, 97 N. C., 339; *Ruffin* v. *Overby*, 105 N. C., 78) but, if it was offered to be shown here by competent proof, its exclusion was harmless error, for it having already been adjudged in this case (118 N. C., 700) that the defendants did not have the title of the "North Carolina Estate Company, Limited" which they set up in their answer, and not having connected themselves with any outstanding title nor shown possession for seven years under color of title, proof of payment of taxes for two or three years before action brought could have availed them nothing. Even evidence of adverse possession for a period less than the prescribed time is

not a circumstance to go to the jury. *King* v. *Wells*, 94 N. C., 344; *Melvin* v. *Waddell*, 75 N. C., 361.

The jury found, on competent evidence and proper instruction, that the conveyance to Hatterby and Clarkson, though absolute on its face, was a mere security for debt. It was therefore void as to the creditors of the North Carolina Estate Company, Limited, and to the plaintiffs who hold under a judgment and execution sale in favor of one of such creditors. *Gregory* v. *Perkins*, 15 N. C., 50; *Gulley* v. *Macey*, 84, N. C., 434. The unregistered deed of defeasance and bonds secured thereby, produced by the defendants in response to an order of the court (under *The Code*, Sections 578 and 1373) were competent to submit to the jury as evidence tending to show the nature of the transaction, without proof of their execution. Being in possession of the defendants, and the facts peculiarly within their knowledge, it devolved upon them to negative any inference arising from the existence of such papers. But this conveyance, even if it was an absolute deed, was not proved by the officers of the corporation but by the individual acknowledgment of Matthew Robins and Walter Mullens and the probate was fatally defective. *Clark* v. *Hodge*, 116 N. C., 761; *Plemmons* v. *Improvement Company*, 108 N. C., 614; *Duke* v *Markham*, 105 N. C., 131; *Bason* v. *Mining Company*, 90 N. C., 417. Its registration was therefore a nullity. *Quinnerly* v. *Quinnerly*, 114 N. C., 145; *Long* v. *Crews*, 113 N. C., 256; *Duke* v. *Markham, supra, Todd* v. *Outlaw*, 79 N. C., 235; *De-Courcy* v. *Barr*, 45 N. C., 181. The subsequent reprobate and reregistration in 1897, since the plaintiff's title accrued and since this action was brought, can have no effect. Acts 1885, Chapter 147; *Waters* v. *Crabtree*, 105 N. C., 394.

This brings us to the point most earnestly debated in this case, i. e. Whether the plaintiffs have acquired the title of the North Carolina Estate Company, Limited, under the execution sale. At January term, 1890, of Catawba Superior Court, John Paalzo obtained judgment against the North Carolina Estate Company, Limited. On March 8, 1890, a transcript of the judgment was sent to the Superior Court of Burke County and was entered on the docket there, on March 10, 1890. An execution on this judgment, under seal of the court, which states on its face that it was issued from Catawba, on March 8, 1890, was sent to the Sheriff of Burke County who endorsed thereon its receipt by him, May 31st, and after due advertisement the land in question, the property of the defendant in the execution, was sold on the 8th of July of the same year, at which sale the plaintiff in the execution bought, and received the sheriff's deed for the land, and in 1892 duly conveyed the same to the plaintiffs in this action. The defendants contend that said sale was void because on March 8, 1890, when the execution purports to have been issued to the sheriff of Burke County, the transcript of the judgment had not then been docketed in the latter County. From the official entries it appears, therefore, that the execution and transcript of judgment were sent to Burke County on the same day, the latter being docketed on the 10th of March, and the former endorsed by the sheriff "Received May 31", and the advertisement and sale were long after the judgment had been docketed, but the defendants contend that the sale thereunder was void unless the judgment had already been docketed in Burke County when the execution issued, on the ground that this is a prerequisite under the words of *The Code*, Sec-

tion 443 and 444, that execution "may be issued to any
county where the judgment is docketed," and because
section 448 provides that the execution must state,
*inter alia*, "the time of docketing in the county to
which the execution is issued." The defendants' coun-
sel contend that such docketing is a condition precedent,
and that an execution issued before the condition is
complied with is absolutely void. The customary prac-
tice in this State has been that which seems to have
been pursued in this case *i. e.* to send to the other
County at the same time the transcript of the judgment
for docketing and the execution. It has not been usual
to require a certificate of the docketing in another coun-
ty before issuing execution to the sheriff thereof. If
such practice rendered this execution absolutely void, a
great many titles are worthless. Even if it is voidable,
it would not avail the defendants who could not attack
such proceedings collaterally, unless they are void.
*Bernhardt* v. *Brown*, 118 N. C., 700. The very able
brief of the defendants' counsel concedes that *The Code*,
Sections 433–436, inclusive, require docketing "in order
to secure a lien for that purpose alone." This is also
apparent from Chapter 439 of the Acts, 1889. *Alsop* v.
*Moseley*, 104 N. C., 60. But they insist it is otherwise
as to Sections 443, 444 and 448, above quoted. The last
three sections however on their face apply to executions
issued to the county in which the judgment is rendered
fully as much as to those issued to any other county and
it has been repeatedly held that a sale under an execution
levied on realty carries a good title though the judgment
was not docketed or the lien of the docketing has expired.
*Sawyers* v. *Sawyers*, 93 N. C., 321 at the bottom of p.
324; *Spicer* v. *Gambill*, 93 N. C., 378; *Coates* v. *Wilkes*,

122—38

94 N. C., 174 at page 181. In *Lytle* v. *Lytle*, 94 N. C.,
683, the very point here presented is passed upon. "The
docketing of a judgment is not an essential condition of
its efficacy, *nor a precedent requisite* to an enforce-
ment by final process. It is only necessary to create
and prolong the lien thus acquired, for the benefit of
the creditor against subsequent liens, encumbrances and
conveyances of the same property." In that case exe-
cution issued to Buncombe County upon a judgment
rendered in McDowell, without docketing the judgment
in Buncombe at all. In *Holman* v. *Miller*, 103 N. C.,
118, it is said " Under the present system no lien is ac-
quired upon land in *the absence of an execution and levy*,
until the judgment has been docketed."

Our conclusion upon the authorities is that docketing
is only for the purpose of giving a lien, and is not a con-
dition precedent to issuing an execution. If there is a
docketed judgment in force at the sale of realty under
execution the sale relates the title back to the date of
such docketing. If no docketed judgment is in force
under which the execution is issued, the title as against
the defendant relates back to the levy but is subject to
docketed judgments in favor of the plaintiffs in force at
the date of the sale. *Pipkin* v. *Adams*, 114 N. C., 201;
*Code*, Section 435.

The requirement in Section 448 that the date of the
docketing should be stated in the execution is like the
requirement to *test* the execution of the preceding term
which is held directory. *Bryan* v. *Hubbs*, 69 N. C.,
423; *Williams* v. *Weaver*, 94 N. C., 134.

The recital in an additional paragraph in the execu-
tion issued to Burke County of a levy on certain uncut
walnut timber in Catawba County, and the order to the
Sheriff of Burke County to sell it, though the attach-

ment on the timber had been vacated, was a pure cleri-
cal error, which did not invalidate the other part of the
execution, and of which certainly the defendants in
this action, who were strangers to the execution, cannot
complain.

Affirmed.