SAMUEL B. WATERS v. A. P. CRABTREE et al.

*Deed, Absolute—Mortgage—Trustee—Contemporaneous Agreement—Registration—Notice—Lapse of Time.*

1. A deed, absolute upon its face, may be treated as a mortgage, when it was agreed, *at the time of its execution*, that such should be its purpose. But the proof of this should be strong and satisfactory.

2. But if the purpose of the deed was to operate as a mortgage, it cannot have that effect against subsequent *bona fide* purchasers for value and without notice.

3. When such contemporaneous agreement is afterwards reduced to writing, it relates back to the execution of the deed.

4. When a deed, absolute on its face, but intended as a mortgage, was executed in 1859, and a defeasance was executed in pursuance of the intention of the parties in 1861, and recorded in 1862, and in 1864 the records were destroyed: *Held,* that subsequent purchasers for value, without *actual* notice, whose deeds were duly recorded, were not affected with notice of such registration.

5. Nor can re-registration of the defeasance in 1886, after the registration of the *mesne* conveyances to the innocent purchasers, avail to defeat their rights.

6. Where, in such case, plaintiff had notice of the registration of the *mesne* conveyances, and of possession of defendants under them for fifteen years, and all this time, and for eight years after paying the debt secured by the deed, he failed to register the defeasance or assert his claim: *Held,* he was guilty of gross negligence and not entitled to the relief of a Court of Equity.

This was a CIVIL ACTION, tried at the Spring Term, 1889, of the BEAUFORT Superior Court, *Boykin, J.,* presiding.

The purpose of this action is to charge the defendants, as trustees, holding the legal title to the land in question for the plaintiff, to compel them to convey such legal title to the plaintiff, and account for rents and profits, and to obtain possession of the land.

The plaintiff alleges, among other things, in the complaint—

"1. That on the 9th day of September, 1859, he was seized in fee and possessed of the land hereinafter described; that at the said time he was justly indebted to George A. Latham in the sum of ____ dollars; that he was anxious and desirous of securing the same; that to do so he conveyed to George A Latham a certain tract of land, lying, &c., (that in question); that the utmost confidence existed between plaintiff and said Latham; the said deed of September 9th was made absolute in form instead of in form of a security for debt; that it was agreed at that time that said Latham would reconvey said land to plaintiff upon the payment of the debt aforesaid.

" 2. That on and before January 7, 1861, plaintiff had paid all of said debt except the sum of $1,702.59, and that on said date he gave his note for what remained due at that time, viz.: $1,702.59; that owing to the approach of war and uncertainties of the times and the enlistment of both parties to said deed, it was agreed on May 25, 1861, that said agreement should be put in writing; that in pursuance thereto the said George A. Latham duly made and executed a certain *defeasance*, which said defeasance was duly proved and recorded in Book No. 31, p. 488 of Beaufort County records, and a copy thereof is hereto annexed as a part of this complaint, and the original he is ready and willing to produce when required; that the premises referred to in said

defeasance are the same as that described in section 1 of this complaint.

"3. That plaintiff did, on the 1st day of July, 1877, pay, take up and cause to be cancelled the note referred to in said defeasance," &c., &c.

The deed above mentioned, of September 9, 1859, was registered before the paper-writing called a "defeasance," whereof the following is a copy:

"WASHINGTON, N. C., May 25, 1861.

"Be it known to all men by these presents, that the brick store and premises, for which I hold a deed, given to me by Samuel B. Waters of the town of Washington and State of North Carolina, is held only to secure the payment of a certain note for seventeen hundred and fifty-nine dollars, dated January 7, 1861, in my possession. After payment of said note, I have no further right or title to said store and premises, and wish my heirs and assigns to understand the agreement existing between said Waters and myself, and to deliver said deed in due form, after the payment of the note named, to Samel B. Waters, his heirs and assigns, to be theirs forever.

(Signed) GEO. A. LATHAM." [Seal.]

"Signed, sealed and delivered in the presence of
W. R. T. BURBANK."

This paper-writing was proved and registered February 19, 1862, and *re-registered* without further proof or order of Court, on May 17, 1886.

It was also alleged, in substance, that the said Latham sold and conveyed the same land by proper deed in fee, dated May 7, 1870, to J. A. Guion; that the latter afterwards sold the same to John A. Arthur, and by like deed, dated August 6, 1872, conveyed title to him; that he died, and his widow

and heirs at law by their like deed, dated 25th of June, 1880, conveyed the same land to Susan D. Crabtree; that she afterwards died, and the defendants and her heirs at law, and surviving husband. The deeds last mentioned were each duly registered before the time of the plaintiff's alleged payment of the note mentioned, except the one last mentioned, which was afterwards registered.

The defendants deny most of the material allegations of the complaint—that the plaintiff is such mortgagor, or has any right as such—and allege that each of such purchasers of said land, in succession, purchased the same for a just and fair price, and without any notice of the plaintiff's alleged rights, &c., and have, each so succeeding the other, had continuous actual possession of the land, and put on the same valuable improvements, &c.

On the trial, the plaintiff put in evidence all the deeds above mentioned and referred to, including that styled "a defeasance," and he testified in his own behalf as follows:

"Prior to September 9th, 1859, I owned the lot now in possession of the defendants. On that day I conveyed it to George A. Latham. I have not been in possession of it since that day. At the time I conveyed it to Latham, there was a fire-proof brick store and a long row of shingle sheds upon it. This is the same property described in the defeasance. After it (the note mentioned) was executed and delivered to George A. Latham, I never saw it again until 1877; it was then in the hands of Charles Latham, Jr., who is now living. The note has been paid; I paid it to the said Charles Latham, Jr., in the fall of 1877; it was paid by me in a note of $1,400, and checks which I held against George A. Latham, amounting to about $500. George A. Latham died about 1885. I have seen the property since. I have been in the town of Washington attending the trial of this case. It is worth, with the buildings removed, $100 per annum."

It was admitted that the deed from Waters to Latham was recorded in the Register's office of Beaufort County prior to the time when the paper-writing termed a defeasance was first recorded in lost book 31. It was further admitted that the deed from Waters to Latham, and the deeds from Latham to Guion, and from Guion to Arthur, were recorded prior to the time of the alleged payment of the note executed by Waters to Latham for $1,702.59, and that all of the deeds above referred to, and the deed from Rosa H. Arthur and others to Susan D. Crabtree, were recorded prior to the re-recording of the paper writing termed a defeasance in new book 31.

This embraced all the evidence introduced by the plaintiff and favorable to him.

When the evidence was closed, the Court informed plaintiff's counsel that it would instruct the jury that if they believed the evidence in the case, the plaintiff could not recover.

Whereupon, the plaintiff, in deference to the intimation of the Court, submitted to a judgment of nonsuit, and appealed.

The plaintiff assigns the following grounds of error:

"1. That the paper-writing of May 25th, 1861, and the deed from S. B. Waters to George A. Latham, constitute a mortgage.

"2. That the deed of George A. Latham to J. A. Guion conveyed simply the legal estate, coupled with the trust, and that Guion became trustee; that the deeds from Guion to Arthur, and from Arthur's heirs at law to Susan D. Crabtree, had the same effect, and that defendants are trustees.

"That plaintiff, having paid and discharged, according to his own testimony, the note, in 1877, to Charles Latham, Jr., he is not barred by the statute of limitations or presumptions."

*Messrs. J. H. Small* and *W. B. Rodman, Jr.*, for plaintiff.
*Mr. C. F. Warren*, for defendants.

MERRIMON, C. J.—after stating the facts: It is very true, as contended by the counsel of the appellant, that a deed conveying the title to land absolute upon its face may be and is treated in equity as a mortgage of the land to secure a particular debt, but this can be only when the parties to it certainly so intended and agreed by mere words, or some writing, to be evidence of such intention and purpose. Such purpose and agreement must appear by strong and satisfactory proof. Otherwise, the deed—a very solemn instrument—must be accepted as expressing the settled intention of the parties to it. It is made, ordinarily, as, and intended to be, the strongest evidence of that purpose, and will be so accepted and treated until, in a Court of Equity, it shall certainly appear that some condition or modification in connection with and part of it has been omitted from it. *Skinner* v. *Cox*, 4 Dev., 59; *Mason* v. *Hearne*, Busb. Eq., 88; *Robinson* v. *Willoughby*, 65 N. C., 520; Coot on Mort., 24, 25; 1 Jones on Mort., 241, *et seq.* But such a deed, duly proven and registered as required by the statutes of this State on the subject of registration, will not prevail as such a mortgage against subsequent *bona fide* purchasers of the land for value, without notice of such mortgage so contemplated by it and the parties to it, because such subsequent purchasers had no notice of it. As to them, it would be secret, fraudulent and void. Hence, a Court of Equity would not enforce it. *Gregory* v. *Perkins*, 4 Dev , 50.

The agreement whereby such a deed, apparently absolute, is to be subject to a condition or modification, or such a mortgage, must exist at the time the deed is executed. When such instruments are perfected, they, by virtue of their very nature, imply and possess certainty—fixedness as to their provisions and stability of purpose—that can be changed

only by an instrument of like character and equal dignity. Neither Courts of law nor Courts of Equity can make or modify valid contracts; they can only determine what they are and give them effect. Courts of Equity can only give effect to and administer rights created by and growing out of them that Courts of law cannot, by reason of their peculiar organization and rigorous methods of procedure. Nor has a Court of Equity authority to change the settled nature of an instrument and make it different from and serve a purpose different from that contemplated by the parties when they made it. 1 Jones on Mort., §§ 244–246.

As we have said, a deed apparently absolute may, by agreement of the parties to it, made at the time of its execution and as part of its basis, be made subject to a condition— made a mortgage—and such agreement may be by mere words, or be reduced to writing, or a separate deed of defeasance may be executed. Such writings may afterwards be executed, but only in pursuance of the agreement made at the time the deed was executed, and, in that case, they will relate back to that time. The writing, whether deed or not, becomes evidence of the nature and purpose of the deed absolute upon its face.

In the present case, the plaintiff appropriately alleges in his complaint, and with sufficient particularity, that the paper-writing called a "defeasance," executed on the 25th of May, 1861, was executed in pursuance of the agreement made at the time the deed, apparently absolute, was executed to Geo. A. Latham, on the 9th of September, 1859, and as part of the ground of it. If this were so, then the latter deed would be taken and treated in connection with the deed of defeasance and as part of it, and the whole as a mortgage of the land to secure the balance of the mortgage debt—that for which the note mentioned was taken. But no evidence was produced on the trial to prove such agreement made at the time the deed of the 9th of September,

1859, was executed, or at all, nor that the debt for which the note was taken was balance of the mortgage debt. The paper-writing of the 25th of May, 1861, makes not the slightest reference to such agreement, nor does it specify or recite at all that the note therein mentioned is the balance of a mortgage debt. Indeed, the plaintiffs failed to produce evidence on the trial to prove a material allegation of the complaint. The paper-writing of the 25th of May, 1861, cannot, of itself, be treated as a mortgage then made. In that view, the debt specified therein was due from the plaintiff to George A. Latham, and the land belonged to him. The debtor cannot give the creditor a mortgage of the latter's own land to secure the former's debt due to him. That would be absurd and nugatory. Treating the land in controversy as the property of Geo. A. Latham at the time the instrument just mentioned was executed, and the latter as an independent agreement, it is, in effect, a covenant on his part to convey the title to the land to the plaintiff when and as soon as he should pay the note therein specified. The plaintiff, however, did not allege such a cause of action.

It might, perhaps, be contended that the facts stated in the complaint developed sufficiently such a cause of action, and, therefore, the Court should have given the plaintiff such judgment as he was entitled to have. If this be granted, we nevertheless are of opinion that, accepting the evidence as produced on the trial as true, the plaintiff was not entitled to any judgment, because such cause of action as appears, as to the defendants, is fraudulent, and cannot be enforced against them.

The covenant last mentioned was proven and registered February 19th, 1862. The registry was afterwards, in 1864, destroyed by fire, and thus the registration of this covenant ceased to give notice, certainly *in fact*, of it to the public as contemplated by law. The Legislature, intending to remedy

105—23

such and like mistakes and misfortunes, afterwards provided by statute (Acts 1866, ch. 41, §§ 3, 14; *The Code*, ch. 8, §§ 56, 68), that "all original papers once admitted to record or registry, whereof the registry or record is destroyed, may, on motion, be again recorded or registered, on such proof as the Court shall require. * * * The records and registries allowed by the Court, in pursuance of this chapter, shall have the same force and effect as original records and registries."

This statutory provision, at least, admonished all persons having such original papers to prove and register them anew in the way prescribed, and good faith required that they should do so. It, moreover, gave the public reason to expect that it would be faithfully observed by persons interested. Nevertheless, the plaintiff did not register anew the covenant in question until the 7th of May, 1886, the day this action began, and then it was registered, so far as appears, without submitting it to any tribunal authorized to take proof of and direct it to be registered, as allowed by the statute. The plaintiff was thus negligent of his duty to himself, remiss and misleading as to the public, and, particularly, for the present purpose, as to the defendants. The evidence went to prove that the defendants, and those under whom they claim, after George A. Latham paid full value for the land, that their *mesne* conveyances were proven and registered; that they had possession of the land from May, 1870, putting valuable improvements thereon at intervals, and exercised acts of ownership over the same. The registration of the *mesne* conveyances was notice to the plaintiff of them and their character and purpose. He ought to have taken notice of such possession of the land so claimed by him, and the presumption is he did. Although he failed to re-register the covenant, as stated above, and notwithstanding the striking facts and circumstances recited, he failed, so far as appears, for more than fifteen years to lay claim to

the land, or to give any notice to the defendants, or those under whom they claimed, of his claim as purchaser. He paid the note mentioned in 1877, and after that—for more than eight years—he failed to give such notice.

If the registration of 1862 of the covenant in question could, under the circumstances of this case, be treated as constructive notice for any purpose, the plaintiff's gross negligence, his long and misleading, silence and failure to give actual notice of his claim, when in fairness and good faith he should have done so, makes it, as against the defendants, unconscionable and fraudulent, and the Court will not enforce it against them.

In any view of the case, as it appears, we think the plaintiff was not entitled to recover.

Affirmed.