J. W. ALLEN v. MAGGIE BOLEN et al.

*Deeds—Registration—Priority—" Connor's Act"—Homestead.*

The plaintiff in an action to recover land which, together with two other tracts, had in 1879 been allotted to defendant's father as a homestead, claimed under a Sheriff's deed dated December 22, 1890, and recorded January 21, 1891, the Sheriff having sold under an execution against the defendant's father, to whom, and at whose instance, upon a re-allotment of the homestead, other lands were allotted by commissioners; the defendant claimed under a deed from her father dated January 18, 1883, and recorded March 13, 1891; the plaintiff had no actual or constructive notice at the sale that the defendant was in possession or that she claimed the land; the judgment debtor laid no claim to the land as a part of his homestead: *Held* (1), that, under "Connor's Act" (ch. 147, Acts 1885), providing that no unregistered conveyance of land shall pass any property as against purchasers for value, the plaintiff's deed takes precedence of the defendant's deed; (2), the *locus in quo* was, as to the creditors of the defendant's grantor, simply former homestead land as to which the grantor had waived his homestead in the constitutional way by deed with the prescribed formalities, and was subject to execution for the grantor's debts.

This was an ACTION of ejectment, tried before *Armfield, J.,* and a jury, at Spring Term, 1893, of the Superior Court of RUTHERFORD County.

The plaintiff and defendants both claim under and through A. Mooney. The plaintiff introduced in evidence two judgments, one in favor of A. B. Grayson against A. Mooney and docketed in Superior Court of Rutherford County on July 24, 1890, founded on a debt made in 1890; one judgment in favor of M. W. Craton, founded on a debt contracted in 1884 and docketed May 6, 1889. Also two executions, one issued on the Grayson judgment, dated August 1, 1890, and one issued on the Craton judgment, dated in June, 1890. The allotment of the homestead of A. Mooney, the defendant in these judgments and executions, was then introduced, and it appeared that the homestead was alloted in July, 1890, and this land was not included in the homestead. The advertisement of the land was then introduced, advertising the land for sale by Sheriff on first Monday of September, 1890. The plaintiff introduced a deed from G. W. Long, the Sheriff of Rutherford county, to J. W. Allen, the plaintiff, dated December 22, 1890, and registered on the 21st day of January, 1891, for the land in controversy, and reciting the judgments and executions, laying off of homestead, advertisement and sale of the land on first Monday of September, 1890. The plaintiff then rested and defendant introduced a deed from A. Mooney to his daughter, the defendant D. P. Mooney, for the land in controversy, dated June 18, 1883, and registered March 13, 1891. This deed on its face purports to be in consideration of $400. The defendant D. P. Mooney testified that she is the grantee in the deed, and was born in 1859, and is now thirty-four years old.

She paid no money or property for the land, but the deed was made in consideration of her having lived with her

36

father and her promise to live with him six years longer. She still lives with her father and has always lived with him as a member of the family—he supporting and clothing her.

That her father since the execution of the deed to her as before had collected the rents from the land in controversy and put them in his own crib with his own rents and used them. Her father had rented the land for her and had given it in for taxes in his own name. That she knew that at the time the deed was made to her her father's homestead had been allotted and no property sold for his debts.

James Mode was introduced for defendants and testified that he was one of three commissioners to lay off the homestead of A. Mooney in 1879; that they laid off to him as homestead the "Golden Valley Lands," consisting of the Mitchell tract and the land in controversy, valued at $800, also the Hamby lands valued at $200. The defendants introduced in evidence the return of the laying off of this homestead, signed by the appraisers, all in due form, and showed that it was laid off under an execution issued from the Court against A. Mooney returned and filed with the execution. He was also one of three commissioners appointed to lay off A. Mooney's homestead in 1890 under executions in the Grayson and Craton cases. That they allotted to said A. Mooney in 1890 as his homestead the Mitchell land and a tract known as the Biggerstaff lands, valued at $1,000.

That subsequent to the date that the first homestead was laid off A. Mooney had disposed of the Hamby lands and acquired the Biggerstaff land.

In the allotment of the homestead in 1890 the land in controversy was not included as a part of the homestead, but in 1879 it was. The homestead report of commissioners in 1879 was not registered, but was filed in the Clerk's

office with the execution.  It appeared that the debts of
Grayson and Craton, to satisfy which the land in contro-
versy was sold by the Sheriff to plaintiff, were contracted
subsequent to the time the first homestead was assigned.
That when the commissioners went to lay off the home-
stead in 1890 A. Mooney objected, saying it had been laid
off, but afterwards asked, if they were going to lay it off,
the Biggerstaff land be assigned him in his new homestead.
There were no exceptions taken or filed to said allotment
of homestead or report, and no appeal from any of the pro-
ceedings.

His Honor intimated to plaintiff's counsel that he would
charge the jury that the land in controversy was exempt
from sale under execution for A. Mooney's debts and there-
fore the plaintiff could not recover.

Under this intimation the plaintiff submitted to nonsuit
and appealed.

*Messrs. Justice & Justice*, for plaintiff (appellant).
No counsel *contra*.

CLARK, J.: No question affecting the homestead is
involved in this case, though that view was strenuously
pressed on the argument.  The father of the defendant had
his homestead, embracing three tracts of land, allotted to
him in 1879.  The defendant put in evidence that her
father executed to her on June 18, 1883, a deed for the
*locus in quo*, which is one of said three tracts.  This deed
was registered March 13, 1891.  The father's homestead
was re-allotted in 1890, other land being put in place of that
conveyed to defendants.  The interesting question whether
a homesteader can have a second homestead allotted to him
when he has conveyed away the whole or part of his allot-
ted homestead is not before us, as there is nothing here

calling in question the validity of the homestead of 1890. The homesteader was expressly empowered to convey the homestead land by the Constitution, Art. X, sec. 8, in the manner there provided.    Having legally conveyed his homestead in the constitutional mode, the homesteader cannot now claim the *locus in quo* as part of such homestead, nor does he do so.    The plaintiff bought at execution sale (September, 1890) under a judgment against the grantor in said deed, which judgment was docketed May 6, 1889. The Sheriff executed a deed to plaintiff December 22, 1890, and it was registered January 21, 1891.

There is no question arising here as to what estate was conveyed by the father to his daughter, if the registration laws were complied with, for the conveyance to the daughter, made in 1883, prior to the lien of the judgment docketed in 1889, carried as to the plaintiff a fee-simple, although the land had previously been allowed as a part of the grantor's homestead.    The question is solely between the grantee in the deed and the purchaser under execution against the grantor.    The defendant claims under a deed from her father which is registered March 13, 1891.    The plaintiff claims under a Sheriff's deed, under an execution against the grantor, which was registered January 21, 1891. The grantor, homesteader, is barred by his deed.    He has no interest in the *locus in quo*, and is asserting none.    This case comes under the provisions of chapter 147, Acts 1885. Though the deed purports to have been executed prior to the passage of the act it does not come within the proviso thereof, for there was no actual notice at the Sheriff's sale that the defendant was in possession, nor constructive notice, for upon the evidence the grantor, not his daughter, remained in possession after execution of the deed in 1883, receiving all the time the rents and profits and listing the land for taxes in his own name, and at first the grantor

seemed disposed to object to the assignment of the home-
stead of 1890, but afterwards assented.   This would indi-
cate, if anything, that he was apparently in possession for
himself.   There was certainly neither actual nor construct-
ive notice that the defendant was in possession or had any
deed.   Under the Act of 1885 the plaintiff's prior regis-
tered deed takes the property in preference to the junior
registered deed, though executed first.   This is the rule as
between mortgages under *The Code,* §1254, of which the
Act of 1885 is a copy *verbatim et literatim,* thus applying to
the registration of deeds the same rule applicable to the
registration of mortgages.   These words having been con-
strued as to the registration of mortgages, when they are
copied and used by the Legislature as to the registration of
deeds, must bear identically the same meaning.   It cannot
be said that the plaintiff, who purchased at an execution
sale, took the land subject to the rights of the grantee under
the unregistered deed.   The principle that such a purchaser
stands in the place of the judgment debtor is excluded by
the statute in so far as it relates to unregistered convey-
ances, a judgment creditor and a purchaser under execu-
tion being within the terms of the act.   The grantor is
barred by his deed.   He cannot claim the land as his
homestead, and is not doing so.   The defendant cannot
avail herself of the unregistered deed to keep off the grant-
or's creditors.   The *locus in quo* was, therefore, as to the
creditors, simply former homestead land, as to which the
grantor had waived his homestead in the constitutional
mode by deed, with prescribed formalities.   The grantee
not having made her deed available by registration, as the
statute requires, the land remained subject to execution for
the grantor's debts, and the Sheriff's deed gave the same
title to the plaintiff as if the grantor had himself executed
a deed instead of the Sheriff, on December 22, 1890, and
the plaintiff had registered it on January 21, 1891, as he did

the Sheriff's deed, prior to the registration of defendant's deed on March 13, 1891. The plaintiff purchaser at execution sale had no notice that this land had ever been embraced in a homestead, as the allotment of 1879 was not recorded as required by *The Code*, §504. He had no notice by registration or otherwise that the defendant held a deed for it, nor any notice, actual or constructive, that she was in possession. There was no objection made at the sale. The homesteader was in possession of another duly allotted and registered homestead, to which he had filed no exception. He made no claim then nor since to this tract as part of his homestead. In fact, he had solemnly waived all claim to the land by deed. If, under these circumstances, the plaintiff did not get a good title no purchaser at an execution sale would ever be safe. The policy of our law is to encourage bidders at such sales so that property may bring a fair price. Error.

SHEPHERD, C. J., concurring: As the purchaser under the execution sale seems, in the opinion, to be assimilated to a mortgagee under the Act of 1885, I desire to express my disapproval of any inference which may possibly be made to the effect that the said act was intended to abrogate the well-known principle that the rights of such a purchaser or of a judgment creditor shall not prevail over any equities existing against the judgment debtor. This principle occupies too important a place in our jurisprudence to be repealed by implication. The act simply provides that no unregistered conveyances, contracts to convey, or leases for more than three years "shall be valid to pass any property" as against creditors (that is, docketed judgment creditors) and purchasers for value; and it clearly has no application to defences not based alone upon such unregistered conveyances, etc., and which attached to the property while in the hands of the judgment debtor.