## UNITED STATES v. HIAWASSEE LUMBER CO.

(Circuit Court of Appeals, Fourth Circuit. December 21, 1912.)

### No. 1,102.

1. VENDOR AND PURCHASER (§ 231*)—DEEDS—VALIDITY OF REGISTRATION—NORTH CAROLINA STATUTES—NECESSITY OF PROBATE.

The North Carolina statute requires deeds executed before a commissioner outside of the state to be probated before a judge or clerk of court within the county where the property is situated before they are eligible for registration. Laws N. C. 1885, c. 147, § 1, known as the Connor Act, provides that "no conveyance of land * * * shall be valid to pass any property as against creditors or purchasers for a valuable consideration from the donor * * * but from the registration thereof within the county where the land lieth," with a proviso that the act shall not apply to deeds already executed until January, 1886, and a further proviso that no purchase from any such donor shall pass title as against an unregistered deed executed prior to December 1, 1885, when the person claiming under such deed shall be in possession, or when the purchaser shall have actual or constructive notice of the prior unregistered deed at the time of the purchase. Held that, under such statutes, as construed by the Supreme Court of the state, the registration of a deed executed outside of the state without having it probated as required by the act of 1868 was without authority and ineffective for any purpose; that, under the later act, such a deed previously executed and so registered, unless probated and registered prior to January 1, 1886, took effect to pass the legal title only from the date of such lawful registration, and was invalid as against a conveyance made and registered in the meantime under a decree of court against the grantor which left in him no title to pass thereunder.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 487, 513–539; Dec. Dig. § 231.*]

2. VENDOR AND PURCHASER (§ 244*)—BONA FIDE PURCHASER—ACTUAL NOTICE OF PRIOR CONVEYANCE.

Evidence considered, and held not sufficient to charge a purchaser of land at judicial sale with actual notice of a prior deed not legally registered.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

---

3. JUDGMENT (§ 497*)—COLLATERAL ATTACK—JURISDICTION—EFFECT OF RE-
CITALS.

Recitals in the decree of a court of general jurisdiction that summons
was duly executed on the defendant, and that lands which were the sub-
ject of the suit were described in an exhibit attached to the complaint,
which is referred to for such descriptions, import verity, and are suffi-
cient as against collateral attack to show that the court had jurisdiction
over the defendant and that lands sold under the decree were those in-
volved in the suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 937, 938;
Dec. Dig. § 497.*]

4. ACKNOWLEDGMENT (§ 47*)—PROBATE OF DEED—CURATIVE STATUTE—CON-
STRUCTION.

Laws N. C. 1869–70, c. 32, providing that "the probate of all deeds
* * * required to be registered, heretofore taken under laws existing
prior to the adoption of the Code of Civil Procedure, is hereby declared to
be valid to all intents and purposes and shall be admitted to registration
as if the probate had been taken under existing laws," has no applica-
tion to deeds which were registered without having been probated at all.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 235–
240; Dec. Dig. § 47.*]

In Error to the District Court of the United States for the West-
ern District of North Carolina, at Asheville; Jas. E. Boyd, Judge.

Action at law by the United States against the Hiawassee Lumber
Company. Judgment for defendant, and plaintiff brings error. Af-
firmed.

This was an action of ejectment, brought by the United States against the
Hiawassee Lumber Company, in the District Court of the United States for
the Western District of North Carolina, to recover 5,000 acres of land em-
braced in grant No. 3,110, situate in Clay county, N. C., as set out in the
complaint. The plaintiff alleges its ownership of the land, and that the de-
fendant is in the unlawful possession of the land and unlawfully withholds
same from the plaintiff, to its damage in the sum of $1,000.

The defendant in its answer denies the ownership of plaintiff of the land,
and says that "it [the defendant] is in possession of tract No. 6,687, by virtue
of grant No. 2,984, which tract is lapped in part by the land claimed by plain-
tiff, as plaintiff contends its tract is located, but defendant denies that plain-
tiff's tract can be located at all; and defendant denies that its possession
of said land is wrongful, but avers that such possession is lawful and right
under bona fide title superior to any title in or claimed by plaintiff." It also
admits that it is a corporation, and sets up by way of affirmative relief that
it is the owner in fee simple of tract No. 6,687, grant No. 2,984, is in posses-
sion of same, and that plaintiff claims some estate or interest in the land
adverse to defendant, which is without foundation in fact or law, and is in-
jurious to defendant's title and possession.

In the trial of the case in the court below the plaintiff introduced the fol-
lowing evidence:

(a) Grant No. 3,110, to E. B. Olmstead, dated November 10, 1867, registered
in Cherokee county November 9, 1868, in Book K, page 561; and the certifi-
cate of survey attached to the grant, purporting to show a survey of tract
No. 4,500 on February 20, 1854, by J. B. Baker, C. S. (county surveyor), and
Thos. Holland and J. C. Huskins, chain bearers (C. B.)

(b) A deed from E. B. Olmstead et ux. to Levi Stevens, dated February 7,
1868, purporting to be registered in Clay county February 23, 1869, in Book
A, page 329, and registered in Clay county May 20, 1896, in Book H, page 61,
conveying said tract of land.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

(c) A deed from Levi Stevens et ux. to the United States of America, dated March 15, 1869, purporting to be registered in Cherokee county August 4, 1871, registered in Clay county May 20–22, 1896, in Book H, page 67, conveying said 5,000-acre tract, and certain other tracts not relating to any lands embraced in this action, but which are situate now in Graham county.

(d) Sixteen grants, issued to E. B. Olmstead, each for 640 acres, dated November 10, 1867, namely:

| Grant. | Entry. | Grant. | Entry. |
|--------|--------|--------|--------|
| 3008 | 6681 | 3009 | 6682 |
| 3010 | 6683 | 3011 | 6684 |
| 3012 | 6685 | 3013 | 6686 |
| 2984 | 6687 | 2982 | 6656 |
| 2998 | 6671 | 3000 | 6673 |
| 2970 | 6557 | 2965 | 6550 |
| 2999 | 6672 | 3001 | 6674 |
| 3002 | 6675 | 2963 | 6541 |

—including the certificate of survey attached to each grant, the entries having been made on May 16, 1859, which were surveyed on May 31 and June 1, 1859. It was admitted that the descriptions in these grants embrace the lands described on the map as indicated by the entry numbers and grants marked and described thereon.

(e) A map made by the surveyors, Shearer and Hayes, showing tract No. 4,500 in *red* lines and the 16 tracts in *black* lines. Defendant claims the lands embraced in the black lines, under the said grants, and which came to them after the grants were issued, as follows:

(f) Deed from K. Elias, Commissioner, to A. Rosenthal, dated October 28, 1882, registered in Clay county October 17, 1890, in Book F, page 282. It conveys about 90 different grants, situate in the counties of Cherokee, Macon, Swain, and Jackson, which are severally described by metes and bounds, including Nos. 3,008, 3,009, 3,010, 3,011, 3,012, 3,013, 2,984, 2,982, 2,963, 3,002, 3,001, 2,999, 2,965, 2,970, 3,000, and 2,998, but does not include grant No. 3,110 for tract No. 4,500. This deed recites that it was made "by virtue of the decree of the superior court of Macon county, rendered at spring term, 1882, appointing, authorizing, and empowering K. Elias, commissioner, to make sale of the lands hereinafter mentioned and described; and whereas, by virtue of the authority and power vested in me, as commissioner aforesaid, I did sell and make a report thereof at the superior court of said county at its fall term, 1882, which report was in all things confirmed, at which time a further and final decree was made by the court authorizing and directing me, as commissioner aforesaid, to execute and deliver a deed of conveyance to A. Rosenthal, the purchaser."

As foundation for this deed, defendant introduced a record from the superior court of Macon county, N. C., certified by W. N. Allman, clerk, and under the seal of the court, dated October 25, 1882, in a case entitled "G. W. Swepson v. E. B. Olmstead," showing complaint; decree at spring term, 1882, signed by H. A. Gilliam, Judge, reciting that "a writ of summons has been duly executed on defendant and no defense was made to this action," and it is "ordered, adjudged, and decreed that the plaintiff have and recover of the defendant the lands mentioned in his complaint and marked 'Exhibit A,' amounting to 89,532 acres"; that defendant is trustee of plaintiff, and holds said land as trustee for plaintiff's benefit, and it is ordered that same be sold, and out of the proceeds of sale the sum of $500 is to be paid to defendant, then pay costs, and pay the residue to the plaintiff, and the lands conveyed to the purchaser; and K. Elias is appointed commissioner to make the sale, conveyance, and payment. A report is made to the court at the fall term, 1882, showing a sale of the lands mentioned in the decree to A. Rosenthal for $40,000, that he is ready to pay it into court upon confirmation of the sale, and that he has paid the $500 to the defendant Olmstead. At the fall term, 1882, final decree is made by his honor, James E. Shepherd, Judge, confirming the sale in all things, and ordering the commissioner to make deed to Rosenthal upon payment of the residue of the money due the plaintiff.

(g) A deed from E. B. Olmstead et ux. to A. Rosenthal, dated October 31, 1882, registered in Clay county November 12, 1906, in Book M, page 337, quitclaiming all interest in all the lands set out in said deed from Elias, commissioner, to Rosenthal.

(h) A deed from A. Rosenthal et ux. to J. H. McAden, in trust for the heirs and devisees of Rufus Y. McAden, dated May 21, 1889, registered in Clay county May 21, 1906, in Book M, page 114, conveying all the lands embraced in the deed from Elias, commissioner, to Rosenthal, and from Olmstead and wife to Rosenthal.

(i) Certified copy of the last will and testament of George W. Swepson, devising all of his property to his wife, Virginia B. Swepson, dated July 14, 1882.

(j) Certified copy of a special proceeding in the superior court of Alamance county, entitled "In the Matter of the Petition of Mrs. Virginia B. Swepson, Executrix, and Sole Devisee and Legatee of George W. Swepson, Dec'd." A petition is sworn to by Mrs. Swepson on August 21, 1884, wherein, among other things, it is set out that the testator died indebted in the sum of about $400,000; that he devised all of his estate to petitioner and appointed her sole executrix of his will; that his personal estate amounted to about $6,000 and has been applied, as far as realized on, to costs of administration; that his equitable and legal real estate is situate in ten (designated) counties, and is set out in an attached inventory; that the will contains no power to sell—and asks for an order to sell so much of the real estate as may be necessary to pay his debts, with costs and charges of administration. An order is made by the clerk on August 21, 1884, finding the facts set out in the petition and adjudging it necessary to sell the whole of testator's lands to enable her to pay his debts, and authorizing and empowering her to sell the lands publicly or privately, for cash or on credit, and make report. Report was filed by her September 9, 1885, showing that, after due advertisement according to law, she sold the lands at public sale at the courthouse door in Graham, Alamance county, on September 7, 1885, half purchase money in 6 months, balance in 12 months, within interest, to various persons, among them: "Lot 53 to R. Y. McAden for $1,000.00; lots 8 to 53, inclusive, are incumbered with a mortgage of over $225,000.00, including interest." Decree, dated June 16, 1886, confirms the sale of September 7, 1885, and orders deeds to be made to the various parties, etc., and to this is attached an exhibit showing that "lot No. 53" contains, among others, the 16 grants under which defendants claim.

(k) Deed from Virginia B. Swepson, executrix, devisee, and commissioner, to R. Y. McAden, dated May 11, 1888, registered in Clay county June 28, 1888, in Book F, page 130.

(l) Will of R. Y. McAden, dated April 9, 1889, devising these lands to J. H. McAden, trustee, with power of sale, etc.

(m) Deed from Henry M. McAden et al., children and devisees of R. Y. McAden to S. E. Cover and others, dated February, 1905, registered in Clay county November 3, 1906.

(n) Deed from S. E. Cover and others to defendant, dated May 17, 1906, registered in Clay county July 8, 1909, in Book P, page 221.

It is admitted that these conveyances cover the lands set out in the boundary claimed by the plaintiff, but by other tract numbers and grant numbers, and described by metes and bounds and the numbers set out in the K. Elias deed.

(o) Defendants also introduced state grant No. 2,328 to G. W. Bristol, dated December 20, 1860, for entry No. 2,302, registered in Clay county June 12, 1862, containing 790 acres, and grant No. 2,325 to George Bristol, dated December 20, 1860, registered in Clay county June 26, 1862, and mesne conveyances bringing title into W. C. Walsh, all of record in Clay county, which is admitted to be located as shown on the map.

At the close of the evidence the defendant asked the court to direct a verdict in its favor upon the issues, which motion was granted. To the granting of this motion plaintiff excepted, and judgment was entered accordingly. The plaintiff sued out a writ of error, upon which the case comes to this court.

A. E. Holton, U. S. Atty., of Winston-Salem, N. C., and Stephen W. Williams, Sp. Asst. U. S. Atty., of Washington, D. C. (A. L. Coble, Asst. U. S. Atty., of Statesville, N. C., on the briefs), for the United States.

James H. Merrimon, of Asheville, N. C., and Marshall W. Bell, of Murphy, N. C., for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and WADDILL, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). In the determination of the questions involved in this controversy, the plaintiff in error will be referred to as the plaintiff and the defendant in error as the defendant, inasmuch as the parties sustain the same relation in this court that they did in the court below.

It is contended by the defendant that grant No. 3,110, which embraces the 5,000 acres involved in this controversy, is invalid on account of certain irregularities as respects the entry, survey, etc. It was admitted in the court below that the 16 grants, under which the defendant claims, embrace the lands sought to be recovered. We have carefully considered this point, and are of the opinion that it is immaterial as to whether the 5,000-acre grant, made to Olmstead, under which the government originally claimed, was valid or not, inasmuch as it is admitted that the grants made to Olmstead, and upon which the defendant relies, embrace this 5,000-acre tract, and as it appears that at the time Olmstead conveyed the land in dispute to Stevens he had acquired title thereto under the 16 grants to which we have heretofore referred.

The questions at issue in this controversy are within a narrow compass, and in order that we may fully understand the vital points it should be borne in mind that Olmstead, the common source through whom the plaintiff and the defendant both claim title, in 1868 made a deed to Levi Stevens which the plaintiff insists embraces the land in controversy. The execution of this deed was acknowledged before John S. Hollingshead, of Washington, D. C., commissioner of deeds for the state of North Carolina, February 7, 1868. The deed from Stevens to the United States was acknowledged before Charles Chauncey, of Pennsylvania, commissioner of deeds for the state of North Carolina, March 15, 1869. The Olmstead deed was first registered in Clay county February 23, 1869, but it does not appear that it was properly probated and ordered to be registered. The same deed was re-registered in the same county on May 20, 1896. The deed from Stevens to the United States was registered in Cherokee county August 4, 1871, but it does not appear that this deed was properly probated and ordered to be registered. This deed was re-registered in this county May 14, 1896.

As shown by the statement of facts, the defendant bases its claim of title upon a deed made by K. Elias, commissioner, to A. Rosenthal, pursuant to a proceeding instituted at the Spring term, 1882, of the superior court of Macon county by George W. Swepson against E. B. Olmstead, in which it was alleged that on the 1st day of October,

1867, the plaintiff was seized of the equitable title to the lands described in Exhibit A, attached to and made a part of the complaint, and that at that time the legal title was in the state of North Carolina; that the plaintiff had paid the state of North Carolina the purchase money for the same, and that the defendant had contracted with the plaintiff for all of said lands, amounting to 85,000 acres, and that the plaintiff had assigned his equitable title to the defendant to enable him to obtain the grant in his (defendant's name), with the express and distinct understanding that the defendant was to reconvey to the plaintiff such portion of the land for which he did not pay. The plaintiff prayed that the defendant be declared a trustee of said lands for the benefit of plaintiff, and that a commissioner be appointed to sell the same, and out of the proceeds of such sale the defendant be paid the sum of $500 due him by the plaintiff, and the costs of the action.

The case was heard upon the complaint, proofs, and exhibits, and the jury returned a verdict in favor of the plaintiff, and a sale of the lands was decreed, and K. Elias was appointed commissioner to make such sale. Accordingly a sale of the lands was had, and A. Rosenthal became the purchaser of the same in the sum of $40,000. The commissioner reported the sale, that the amount had been paid, and his report was confirmed, and, in pursuance of the decree confirming his report, he executed a deed to Rosenthal for the same. The deed thus obtained from K. Elias, commissioner, was properly registered in Clay county October 17; 1890, six years prior to the second registration of the deed from Olmstead to Stevens, and also six·years prior to the re-registration of the deed from Stevens to the plaintiff.

The objection that is urged as to the registration of the deed from Olmstead to Stevens in the first instance also applies to the registration of the deed from Stevens to the plaintiff; it being insisted by the defendant that the registration of these deeds was invalid. Therefore, if we should reach the conclusion that the registration of the deed from Olmstead to Stevens was valid, it would necessarily follow that the registration of the deed from Stevens to the plaintiff was valid, and the legal title to the lands in controversy would thereby vest in the plaintiff. Hence the first question that arises is as to the effect of the registration of the deed from Stevens to the plaintiff in 1871. If this registration was not valid, and no title passed thereby, then the question naturally arises as to whether such attempted registration was either actual or constructive notice to subsequent creditors or purchasers for value. If we should determine this question in the negative, it would necessarily follow that the plaintiff would not be entitled to recover. This being an action of ejectment, the plaintiff must recover, if at all, upon the strength of its own title, and not upon the weakness of its adversary's title.

[1] What was the effect of the registration of these two deeds? It is insisted by counsel for the defendant that, inasmuch as these deeds were·not probated by the judge of probate, the register of deeds was not authorized to place the same upon the record. Counsel for plaintiff cite certain cases bearing upon this question, but those cases have no reference to the requirements of the act of 1868. While it is

true that prior to 1868 the statute did not require that a probate taken by a commissioner of deeds out of the state should be adjudged to be correct, yet there can be no question that by the act of 1868 an adjudication was required and is essential. While it appears that these deeds were placed upon the record of the register of deeds in the respective counties, yet it nowhere appears that the same were properly probated by the clerk or other proper official, or that the register of deeds was directed to register the same. This question has been passed upon by the Supreme Court of North Carolina, and that court has uniformly held that the register of deeds is without authority to place a deed on the registration books unless it has been duly probated by one of the judges of the Supreme Court, superior court, or the clerk of the court or his deputy in the county where the land is situate. In the case of Cozad v. McAden, 150 N. C. 206, 63 S. E. 944, the court said:

"It has been uniformly held, since the enactment of the statute controlling this matter in 1868, that when the acknowledgment of a deed or other instrument requiring registration has been taken before some official outside of the state, in order to a valid probate, the deed with a proper certificate, should be presented to the resident clerk for approval, and there should be an express adjudication to that effect by the local officer."

In the case of Evans v. Etheridge et ux., 99 N. C. 43, 5 S. E. 386, it appears that on the 2d day of May, 1866, Etheridge and wife executed a deed in trust to W. T. Brinkley, conveying to him the property therein mentioned and for the purposes named. This deed in trust was delivered to the register of deeds for Dare county and registered by him without the same having been probated. The court, in that case, in referring to this phase of the question, said:

"It is insisted by the appellees that the deed in question was proved in compliance with this section before a commissioner of affidavits, and that the adjudication of the clerk is only directory, and not an essential prerequisite to registration, and that, having been registered upon the certificate of the commissioner, though without any adjudication and order of registration by the clerk, it is valid, and, the purposes of registration being to give notice, the spirit and purpose of the law is fully met. We are referred to a number of cases (Young v. Jackson, 92 N. C. 144, Holmes v. Marshall, 72 N. C. 37, and other cases) in which it was held that, 'the provision requiring the certificate of probate by the probate judge of a county other than that of registration to be passed upon by the probate judge (the clerk) of the county of registration is directory, and that a registration which has not been so passed upon is not void.' The analogy between those cases and that before us is lost in the fact that the functions of the clerk are broader than those of the commissioner. He not only takes the proof of acknowledgment, but *adjudges* the fact of 'due execution,' whereas the commissioner of affidavits, and perhaps others, only take and certify the acknowledgment or proof. 'Probate of deed is taken,' says Pearson, J., in Simmons v. Gholson, 50 N. C. 401, 'by hearing the evidence touching the execution—i. e., the testimony of witnesses or acknowledgment of the party—and from that evidence *adjudging the fact* of its execution. Where the evidence is offered to the court, the entire probate is taken by it; but where the agency of a commissioner is resorted to, a part of the probate—i. e., hearing the evidence—is taken by him and certified to the court, and thereupon the probate is perfected by an adjudication that the certificate is in due form and that the fact of the execution of the deed is established by the evidence so certified.' In cases of probate before clerks who can both take the evidence and adjudicate the fact, it has been held that, though it ought not to be omitted, the fiat of the clerk of the county of regis-

tration is not an absolute prerequisite to a valid registration, but the validity of the registration in such cases rests upon the fact that there has been an adjudication of 'due execution' by an officer competent to both hear evidence and adjudicate. The register has no authority to put the deed upon his books unless proved and so adjudged in some one of the modes prescribed by the statute. The probate is his warrant for doing so,' and if registered without this warrant it does not create such an equity in the mortgage trustee as to affect creditors or subsequent purchasers for value. It was so adjudged in Todd v. Outlaw, 79 N. C. 235, and we refer to that case and the authorities there cited."

In that case the court held that, inasmuch as the deed in trust from Etheridge and wife to Brinkley was registered without proper warrant, such registration did not render it valid as against the plaintiff and his creditors. In the case of Bernhardt v. Brown, 122 N. C. 587, 29 S. E. 884, 65 Am. St. Rep. 725, this doctrine was again announced by the Supreme Court of North Carolina.

An examination of the record discloses the fact that it was not contended by counsel for the plaintiff in the court below that the attempted registration of the deed from Olmstead to Stevens was sufficient to divest Olmstead of the legal title. In view of the provisions of the statute and the construction that has been placed upon it by the Supreme Court of North Carolina, we are of the opinion that the registration of this deed was invalid, and that the legal title did not pass thereby as against subsequent creditors and purchasers for value.

However, it is insisted by the plaintiff that Rosenthal took title to the 16 tracts of land now owned by the defendant with constructive or actual notice that the land in question had been conveyed to Stevens, and in turn by Stevens to the plaintiff. To support this contention our attention is called to what is known as the "Connor Act," contained in chapter 147 of the Laws of 1885, section 1 of which is in the following language:

"That section one thousand two hundred and forty-five of the Code be stricken out, and the following inserted in lieu thereof: No conveyance of land, nor contract to convey, or lease of land, for more than three years shall be valid to pass any property, as against creditors or purchasers, for a valuable consideration from the donor, bargainor or lessor, but from the registration thereof within the county where the land lieth: Provided, however, that the provisions of this act shall not apply to contracts, leases or deeds already executed, until the first day of January, 1886: Provided, further that no purchase from any such donor, bargainor or lessor, shall avail or pass title as against any unregistered deed executed prior to the first day of December, 1885, when the person, or persons holding or claiming under such unregistered deed shall be in the actual possession and enjoyment of such land, either in person, or by his, her or their tenants, at the time of the execution of such second deed, or when the person or persons claiming under or taking such second deed, had at the time of taking or purchasing under such deed actual or constructive notice of such unregistered deed, or the claim of the person or persons holding or claiming thereunder."

It is obvious from the provisions of this act that, at the time of its enactment, the Legislature realized that something had to be done in order that conveyances of this character might be put upon a more certain basis, and thus remove all doubts as to the validity of titles and thereby prevent litigation. It appears that in many instances parties had failed to register their deeds, some had not registered their

deeds within the time allowed by law, and others had attempted to have them registered but had failed to comply with the statute then in force relating to the registration of such instruments. *Therefore this act was passed, requiring all unregistered deeds to be registered before the 1st day of January, 1886, and providing that only from the date of such registration should the legal title pass from the donor, bargainor or lessor.* The act adopts the language of the statute in force in that state prior thereto in regard to the registration of mortgages; its purpose being to place deeds in respect to their registration and its effect upon creditors and purchasers for value upon the same footing as mortgages. Therefore the decisions in regard to the registration of mortgages and its effect upon creditors and purchasers for value apply with equal force to the registration of deeds.

There are two provisos in this statute; the first being that the provision of the act should not apply to contracts, leases, or deeds already executed until the 1st day of January, 1886, and the second that—

" * * * no purchase from any such donor, bargainor or lessor, shall avail or pass title as against any unregistered deed executed prior to the first day of December, 1885, when the person or persons holding or claiming under such unregistered deed shall be in the actual possession and enjoyment of such land, either in person or by his, her or their tenants, at the time of the execution of such second deed, or when the person or persons claiming under or taking such second deed, had at the time of taking or purchasing under such deed actual or constructive notice of such unregistered deed, or the claim of the person or persons holding or claiming thereunder."

For some reason the plaintiff failed to avail itself of the provisions of this act by which it was given until the 1st day of January, 1886, to register its deed and thereby perfect its title. Therefore we must determine as to whether the former registration of this deed served as either actual or constructive notice to Rosenthal and those claiming under him. In considering this act it should be constantly borne in mind that the general rule incorporated therein *is that no deed shall be valid as against creditors and purchasers for value except from the date of registration.* Therefore, in our opinion, as to all deeds theretofore and thereafter executed, the registration was essential as against creditors and purchasers for value. It is well settled in North Carolina that the registration of a deed or mortgage is valid as against subsequent creditors and purchasers for value, not upon the theory that it puts them upon notice, but because it divests the title of the grantor, leaving nothing to convey—hence nothing passes. If its registration is without authority of law, it has no such effect, and is invalid as against purchasers for all purposes. The purpose of the act of 1885 was to remove all controversy as to what would constitute notice, either actual or constructive, and to make the registration the single essential act on the part of the grantee without which his deed was ineffectual to convey any title as against creditors and purchasers for value. In the case of Collins v. Davis, 132 N. C. 109, 43 S. E. 580, Judge Connor, in speaking for the court, said:

"Hollingsworth took his deed with such notice as the possession and the registration of the mortgage from Leonard to Tyson and Davis to Collins gave him of the condition of the title. His honor was of the opinion that

he purchased with notice, and therefore took subject to the incumbrances and equities of Davis. By the failure to record the deed from Leonard to Davis, it was, under the provisions of chapter 147, Laws 1885, invalid as against Hollingsworth, who purchased for value. The proviso to said act, saving the rights of persons in the actual possession of land, applies only to deeds executed prior to December 1, 1885. In Maddox v. Arp, 114 N. C. 585, 19 S. E. 665, Shepherd, C. J., says: 'The present case not being within the proviso of the act, actual notice of a prior unregistered contract to convey cannot, in the absence of fraud, affect the rights of a subsequent purchaser for value, whose deed is duly registered according to law.' It will be observed that the act of 1885 is an exact copy of section 1254 of the Code, with the insertion of the words 'conveyance of land or contract to convey or lease,' etc., placing deeds upon the same basis, in regard to registration as mortgages and deeds of trust; hence, as said by this court in Allen v. Bolen, 114 N. C. 560, 18 S. E. 964, 'thus applying to the registration of deeds the same rule applicable to the registration of mortgages.' Since the passage of the act of 1829 (chapter 20), brought forward and incorporated in the Code as section 1254, Reade, J., in Robinson v. Willoughby, 70 N. C. 358, says: 'The decisions have been uniform that deeds in trust and mortgages are of no validity whatever as against purchasers for value and creditors, unless they are registered, and that they take effect only from and after registration just as if they had been executed then and there. * * * No notice, however full and formal, will supply the want of registration.' In Hooker v. Nichols, 116 N. C. 157, 21 S. E. 207, Faircloth, C. J., quoting the language of chapter 147 of the Laws of 1885, says: 'It will be noted that the effective words of this act are identical in substance with section 1254 of the Code, and we are driven to the conclusion that the Legislature, with full knowledge of the meaning and effect of said act of 1829, intended to apply the same rule to all conveyances of land as declared in the late act of 1885, and we must give the same effect to it.'"

The same rule is announced in Tremaine v. Williams, 144 N. C. 114, 56 S. E. 694, in which the court, said:

"No notice to purchasers, however full and formal, will supply the want of registration"

—citing Quinnerly v. Quinnerly, 114 N. C. 145, 19 S. E. 99, in which Chief Justice Clark announced the same rule.

[2] It is also insisted that Rosenthal had actual notice of the transfer of this land from Olmstead to Stevens, and by Stevens to the United States, by virtue of the following statement contained in the complaint filed in the case of Swepson v. Olmstead, supra; it being the proceeding wherein the lands in controversy were decreed to be sold, and in pursuance of which Rosenthal purchased the land and took his deed:

"That the defendant failed to pay for all of such lands, except 32,000 acres, for the said 32,000 acres of land he did pay for, which are situated in Stecoah township, in the county of Graham, N. C., and which were conveyed (as plaintiff is informed) by defendant to the government of the United States."

It is also further insisted that the publication of notice of sale of these lands by the plaintiff in the News and Observer, a daily paper of that state, wherein a description of the same was contained, was notice to Rosenthal and Swepson; it appearing from the statement of the editor of that paper that "to the best of his knowledge and belief" Mr. Swepson was a subscriber. We are of opinion that the cases to which we have referred effectually dispose of this point. However,

if the rule were otherwise, we do not think the reference contained in the proceeding to which we refer would be sufficient to put Rosenthal on notice as to the claim of the plaintiff. If he had undertaken to investigate the matter, he certainly could not have ascertained anything definite from the reference made therein. By an examination of the records of Graham county he could not have found any deed conveying these lands either to Stevens or to the plaintiff, because neither of the deeds were registered in that county. If he had gone to Stecoah township, in Graham county, he could not have located the same in accordance with the description contained in the complaint filed in the proceeding by virtue of which he became purchaser of these lands for value. Nor do we think that the evidence as respects the publication of notice in the News and Observer would be sufficient to bring this case within the rule for which plaintiff contends. These circumstances are entirely too vague, uncertain, and indefinite to serve as notice under the law and decisions of the Supreme Court of North Carolina on this subject. In the case of Hinton v. Leigh, 102 N. C. 28, 8 S. E. 890, the court, in referring to the question of notice, said:

"The mere fact that the trustee of the deed of trust, and the purchasers for a valuable consideration claiming under it, and creditors, may, at the time of its registration, have had notice, however clear, of the prior unregistered mortgage, could not at all prejudice them. This is well settled by numerous adjudications of this court. It would be otherwise, however, as to such creditors or purchasers who should *fraudulently* prevent or delay the registration of the prior mortgage or deed of trust."

There is not the slightest intimation by counsel for the plaintiff that Rosenthal did or said anything that could be construed as an attempt on his part to fraudulently prevent or delay the registration of these deeds. The Connor Act is eminently fair, and at the time of its enactment afforded one whose deed was not properly registered an opportunity to have the same registered and thus perfect what may have otherwise been an imperfect title. The deeds under which plaintiff claims, as we have stated, had not been properly registered; but, when this act was passed, it was afforded an opportunity to have the same registered before the 1st day of January, 1886; but it failed to avail itself of the provisions of the act by not having the same registered until May, 1896. In the meantime Rosenthal, under whom the defendant claims by an unbroken chain, registered his deed in 1890, thus completely depriving the defendant of the right to perfect its title by registration in pursuance to the Connor Act.

Counsel for the plaintiff relies upon the case of Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063, to sustain its contention as respects this point, and insists that the doctrine of caveat emptor applies to the case at bar. While we recognize the principle relied upon by the plaintiff, nevertheless, in view of the law of North Carolina, as construed by the Supreme Court of that state, we are of the opinion that the rule invoked does not apply. The deed to Rosenthal having been registered prior to the registration of the deed from Olmstead to Stevens, as well as the deed from Stevens to the United States, we are clearly of the opinion that Rosenthal thereby acquired the legal title to the lands in dispute.

However, it is also contended by counsel for the plaintiff that the subsequent re-probate and re-registration of these deeds relate to the first registration, and that Stevens, after having re-registered his deed, thereby became vested with the legal title to the same. This question was expressly decided in the case of Bernhardt v. Brown, 122 N. C. 587, 29 S. E. 884, 65 Am. St. Rep. 725, in which the court, said:

"* * * The subsequent re-probate and re-registration in 1897, since the plaintiff's title accrued, and since this action was brought, can have no effect. Laws 1885, c. 147; Waters v. Crabtree, 105 N. C. 394 [11 S. E. 240]."

The same principle is also announced in the cases of Phillips v. Hodges, 109 N. C. 248, 13 S. E. 769; Brown v. Hutchinson, 155 N. C. 205, 71 S. E. 302; Phifer v. Barnhart, 88 N. C. 333.

[3] It is also contended that the defendant did not derive title from Olmstead under the proceeding in the case of Swepson v. Olmstead, supra, for the reason that the certified copy of transcript of record fails to show that any summons was issued in that proceeding and served upon the defendant, and that the court, therefore, had no jurisdiction of the party defendant and that the judgment as to him is void; further, that the defendant's title is defective, in that under said proceeding there is no description of the land in question in the complaint, nor in any other part of said proceeding. While it is true that the certified copy of the proceeding in the superior court, which was used as evidence in the trial in the court below, did not contain the summons, nevertheless the decree, among other things, contained the following recital:

"This cause coming on to be heard upon the complaint, proofs, exhibits, and verdict of the jury, and it appearing to the satisfaction of the court that a writ of summons has been duly executed on defendant, and there is no defense made to this action. * * *"

Thus it will be seen that the decree authorizing the sale of this land recites the fact that a writ of summons had been duly executed on the defendant, which obviated the necessity of producing the summons as the basis for that proceeding. The court having found as a fact that the summons was duly executed and returned necessarily shows that the summons had been issued.

As to the next point, to wit, that there was no description of the lands involved in that controversy: We call attention to the fact that the decree also contains the following:

"* * * Ordered, adjudged, and decreed by the court that the plaintiff have and recover judgment of the defendant the lands mentioned in his complaint and marked 'Exhibit A' amounting to eighty-nine thousand five hundred and thirty-two acres of land."

Also the third paragraph of the complaint in that case is in the following language:

"That the defendant advanced to the plaintiff the sum of $500.00, which sum was to be paid out of the sales of these lands when sold by plaintiff; and defendant, in pursuance of the aforesaid agreement, obtained in his own name state grants for the said lands which are described in Exhibit A, and hereto attached and made a part of this complaint."

Thus it will be seen that there was a statement in the complaint to the effect that a full and complete description of the lands involved in that controversy was contained in Exhibit A, which was attached to and made a part of the complaint filed therein. This, taken in connection with the further fact that the decree authorizing the sale of the lands, refers to them as being described in Exhibit A, is sufficient to show that there was a full and complete description of said land in the complaint and exhibit filed therewith. It also appears that the commissioner executed a deed to Olmstead in accordance with the decree, in which, among other things, is recited the authority of the decree, the sale of the land thereunder, his report and final decree confirming the same, and then proceeds to convey these lands by metes and bounds as set out in Exhibit A. It further appears that subsequent thereto Olmstead and his wife executed a quitclaim deed, which was delivered to Elias, commissioner, thus recognizing and approving the proceeding to the fullest extent. The superior court being a court of general jurisdiction, its decrees and judgments import verity, and, it appearing in the decree authorizing the sale of these lands that a summons was served upon the defendant, and it further appearing that the complaint referred to Exhibit A, attached thereto, which contained a description of the grants included in the deed from Elias, commissioner, to Rosenthal, we think it sufficiently appears that the proceeding was regular, and therefore, under the circumstances, not subject to collateral attack.

[4] But it is further contended that if there be any defect in the registration of the Olmstead and Stevens deeds, on account of failure to comply with the requirements of the law in force at that time, that the same is cured by the provisions of chapter 32, of the Laws of North Carolina of 1869–70, ratified January 28, 1870, which are in the following language:

"* * * That the probate of all deeds and other instruments required to be registered, heretofore taken under laws existing prior to the adoption of the Code of Civil Procedure, is hereby declared to be valid to all intents and purposes and shall be admitted to registration as if the probate had been taken under existing laws."

Apparently realizing that many deeds had been executed, proved, and registered in a manner not fully meeting the requirements of the law, the Legislature, by Laws 1876–77, c. 23, ratified December 12, 1876, provided as follows:

"That all deeds and other instruments of writing, allowed of (or) required to be registered, which have been heretofore proved or acknowledged, and the private examination taken of femes covert, if any, executing the same, and certified according to the then existing law, but not registered, shall, with such certificate, be registered by the register of the proper county, upon payment to the judge of probate of such county, or other officer authorized by law to admit such deed to probate for such register, the registration fees as prescribed by law, and presentation of such deeds or other instruments of writing, with such certificate to such register for registration, at any time within two (2) years, from and after the ratification of this act; and the registration of such deeds and other instruments of writing, herein provided for, as well as the registration of all deeds, and other instruments of writing, allowed or required to be registered, which have been heretofore registered, but not by or within the time required by law, shall be as valid and

effectual in law as if the same had been before duly registered in all respects according to law: Provided, that this act shall not apply to deeds of trust, mortgages, or marriage settlements."

There is nothing contained in the foregoing that could be construed to relate to the defects alleged as respects the probate of these deeds. In this instance there was no probate at all. Therefore it cannot be said that this act, which undertakes to cure defective probates, can have any relation to instruments attempted to be registered in the manner these were. For that reason we do not think this act applies to the case at bar.

We have carefully considered the various cases relied upon by counsel for the government, but are of the opinion that, for the reasons hereinbefore stated, they do not apply to the case at bar. There are various assignments of error; but, owing to the conclusion we have reached as to the crucial points in this case, we do not deem it necessary to discuss the same. After a careful consideration of the facts and the law governing this case, we are of the opinion that the rulings of the learned judge, who presided in the court below, were proper, and therefore the judgment of that court should be affirmed.

Affirmed.